555 A.2d 766

Anthony A. BARBER, et al., at No. 16 Sylvester Connor, et al., at No. 17 Robert Fortner, et al., at No. 18 Lois Yentzer, Administratrix of the Estate of Ronald Yentzer, Deceased at No. 19 James A. Rinamon and Dorothy Rinamon at No. 20

v.

PITTSBURGH CORNING CORPORATION, et al., at Nos. 16, 17 and 18 Pittsburgh Corning Corporation, PPG Industries, Inc., Dr. Lee B. Grant (Individually and as Medical Director of PPG Industries, Inc.), Charter Consolidated, Ltd., Charter Consolidated Investments, Ltd., Cape Industries, Ltd., Cape Asbestos Fibres, Ltd., and North American Asbestos Corporation at No. 19 Pittsburgh Corning Corporation, PPG Industries, Inc., Charter Consolidated, Ltd., Charter Consolidated Investments, Ltd., Cape Industries, Ltd., and Cape Asbestos Fibres, Ltd., at No. 20

v.

COMMONWEALTH of Pennsylvania and American Flint Glass Workers Union, AFL–CIO at Nos. 16, 17 and 18.

Appeals of PITTSBURGH CORNING CORPORATION at Nos. 16, 17, 18, 19 and 20.

Supreme Court of Pennsylvania.

Argued Sept. 30, 1988.

Decided March 3, 1989.

Gerald C. Paris, Diane W. Perer, Pamela A. McCallum, Reed Smith Shaw & McClay, Pittsburgh, for appellants.

Stanley W. Greenfield, Greenfield & Murtagh, Pittsburgh, Frank Petramalo, Jr. Gordon & Barnett, George H. Cohen, Washington, D.C., Richard Colasurd, Toledo, Ohio, Richard S. Glasser, H. Seward Lawlor, and Glasser and Glasser, Norfolk, Va., George E. McGrann, Edmund L. Olszewski, Dickie, McCamey & Chilcote, William M. Wycoff, Thorp, Reed & Armstrong, Pittsburgh, Herbert L.C. Brook, Chicago, Ill., Brian H. Baxter, Deputy Atty. Gen., Dept. of Justice, Pittsburgh, for appellees.

Martin M. Krimsky, Krimsky, Levy, Angstreich, Finney, Mann & Burkett, Philadelphia, for Pennsylvania AFL–CIO, amicus curiae.

Eugene Mattioni, Philadelphia, for Robert and Priscilla McCullough.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION

NIX, Chief Justice.

This appeal presents the question of whether there exists an exception to the exclusivity provision of the Occupational Disease Act ("ODA")[1] for injuries to employees caused by the alleged intentional misconduct of their employer. The appellees, the plaintiffs below, instituted this action against their former and/or current employer[2] appellant Pittsburgh Corning Corporation ("PCC" or "Pittsburgh Corning") and its parent corporations to recover damages for asbestos related diseases they allegedly contracted while employed at PCC's Port Allegheny Plant.

The initial action, *Barber, et al. v. PCC, et al.* was instituted in the Court of Common Pleas of Allegheny County in August, 1979. That action was subsequently consolidated with two other cases for trial and discovery purposes, *Connor, et al. v. PCC, et al.,* filed in June 1981, and *Fortner, et al. v. PCC, et al.,* filed August 1981. Later actions were also brought on behalf of other additional plaintiffs in *Rinamon* on October 10, 1984 and *Yentzer* on March 8, 1985.

*Barber, Connor* and *Fortner* represented approximately seventy-five former and current employees, and their spouses, who claimed they were injured and damaged as a result of exposure to asbestos dust during their employment at the Port Allegheny Plant. Pittsburgh Corning, in its New Matter, pleaded the exclusivity provisions of the ODA and

1. 77 P.S. § 1201 *et seq.*
2. Although PCC closed the Port Allegheny Plant in 1972, some of the plaintiffs remain employed by the company in different capacities and at different locations.

of the Workmen's Compensation Act ("WCA").[3]  On December 21, 1984, PCC moved for summary judgment on the ground that the ODA barred the plaintiffs' action because the plaintiffs' exclusive remedy was to proceed under the statute.  The trial court agreed that the action was barred and granted summary judgment for the defendants.  The defendants' motion for summary judgment was also granted in *Rinamon* and *Yentzer*.  The plaintiffs thereafter filed notices of appeal and the Superior Court consolidated all five cases for purposes of appeal.

By orders and opinion dated July 23, 1987, a panel of the Superior Court reversed the trial court's order for summary judgment and remanded the cases for further proceedings.  The three-member panel of the Superior Court[4] concluded that the legislature could have never intended to immunize an employer from liability for harm caused by his "reprehensible intentional wrongdoing [which was] reasonably calculated to lead to severe personal injury or death of employees."[5]

We granted allocatur to consider whether the Occupational Disease Act bars common law recovery for an injury to an employee alleged to have been intentionally inflicted by an employer.  We were faced with the same issue in *Poyser v. Newman & Co., Inc.*, 514 Pa. 32, 522 A.2d 548 (1987), with respect to the WCA.  There we held that the WCA does not permit a common law cause of action for injuries caused by the intentional tort of the employer.  The Superior Court went to great lengths in a footnote to distinguish this Court's decision in *Poyser*.[6]  For the reasons that follow we hold that our decision in *Poyser* is dispositive of the issue presently before this Court.

3.  77 P.S. § 1, *et seq.*

4.  The opinion was authored by Brosky, J. and joined by Montgomery, J.  Del Sole, J., dissented in a separate opinion.

5.  *Anthony A. Barber, et al v. Pittsburgh Corning Corporation, et al.*, 365 Pa.Super. 247, 253, 529 A.2d 491, 495 (1987).

6.  *Barber v. Pittsburgh Corning Company, supra*, 365 Pa.Superior Ct. at 263 n. 8, 529 A.2d at 499 n. 8.

The undisputed facts are that Pittsburgh Corning operated a manufacturing plant in Port Allegheny from 1964 until 1972 which produced thermal insulation made from raw asbestos fibers. During that period the appellees were employed by PCC at the plant and were exposed to various levels of asbestos dust. Appellees have claimed that they, or their spouses, have suffered asbestos related diseases, including asbestosis and lung cancer, as a result of their exposure to the dust during their employment with appellant.

Appellees contend that PCC knew of the danger of asbestos and yet deliberately did nothing to protect the workers from the danger. Appellees also allege that PCC allowed the levels of asbestos dust in the air at the plant to substantially exceed the safe levels recommended by experts and governmental standards. Appellees further contend that PCC deliberately refused to implement controls recommended by its own engineering team which would have reduced the airborne levels of asbestos dust. It is also alleged that PCC knowingly decided not to warn employees of the health hazard presented by exposure to high levels of asbestos dust.

Appellants admit, for purposes of this appeal, that its employees were exposed to asbestos and that it knew or should have known that exposure to asbestos dust was a health hazard. PCC admits that its safety precautions did not go far enough to protect its workers. Furthermore Pittsburgh Corning agrees that it did not adequately warn its employees of the risks involved and that it did represent to its plant employees that work area conditions were safe.

Appellees argue that PCC deliberately subjected its employees to unsafe levels of asbestos dust which it knew to a substantial certainty would result in harm to the employees. They argue that this conduct amounts to an intentional tort. We find that, like the WCA in *Poyser*, the ODA provides the exclusive remedy for the injuries alleged herein. In *Poyser* this Court held that the exclusivity provision, section 303(a) of the WCA, 77 P.S. § 481(a), bars a common law

action against an employer to recover damages for an intentional tort which injured the employee. There an employee argued that he had been injured as a result of his employer's intentional misconduct and deliberate disregard for employee safety and that he should not be precluded from recovering damages in an intentional tort common law action. We said

> The appellant's argument is an interesting one; but it is one that must be resolved by the General Assembly, not this Court. What he is asking us to do is to engraft upon section 303(a) of the Act an exception the legislature did not see fit to put there.
>
> *Poyser,* 514 Pa. at 38, 522 A.2d at 551.

The same reasoning applies in the instant action. The ODA and the WCA are similar statutes, designed to provide certain compensation for employees injured in the course of their employment.

Although the language varies slightly, the exclusive remedy provisions of both the WCA and the ODA are very similar. *See Greer v. United States Steel Corporation,* 475 Pa. 448, 380 A.2d 1221 (1977). Section 303(a) of the Workmen's Compensation Act [7] provides:

> (a) The *liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes,* his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108. (Emphasis added.)

The Occupational Disease Act, section 303,[8] states:

> Such agreement shall constitute an acceptance of all the provisions of article three of this act, and *shall operate as a surrender by the parties thereto of their rights to any form or amount of compensation or damages for any disability or death resulting from occupational*

7. 77 P.S. § 481.
8. 77 P.S. § 1403.

*disease, or to any method of determination thereof, other than as provided in article three of this act.* Such agreement shall bind the employer and his personal representatives, and the employe, his or her wife, or husband, widow or widower, next of kin, and other dependents. [Emphasis added.] [9]

The clear language of both of these sections dictates that the only remedy available to an injured employee is statutory. In fact the language of section 303 of the ODA is stronger than that used in the WCA in that it clearly states that acceptance of the Act operates as a forfeiture by the employee of any and all common law causes of action that the injured employee may wish to pursue. While the language used by the legislature varies slightly between the two Acts, the same analysis of the historical underpinnings of the exclusive remedy doctrine applies equally to both. As we stated in *Poyser,* the exclusivity provisions of these acts are "a version of the historical *quid pro quo* that employers received in exchange for being subjected to a statutory no-fault system of compensation for worker injuries." *Id.* 514 Pa. at 37, 522 A.2d at 550.

In each instance, the employer, in exchange for immunity from lawsuits by injured employees, provides certain and reasonable compensation to injured employees without regard to fault. By the same token, the employee relinquishes his right to sue at common law in exchange for a certain reasonable recovery for injuries he suffers in the course of his employment. [10]

9. The agreement referred to in the Acts is actually a conclusive presumption that both the employer and the employee have agreed to be bound by all of the provisions of the statute. If the parties wish to reject this "elective compensation", they must carefully comply with the rejection procedures described in the Act in order to overcome the conclusive presumption of acceptance.

   The sections of both Acts governing the election, presumption and rejection of the Acts' provisions are section 301–304, 77 P.S. §§ 411–431, 461, 481, 482 and 77 P.S. § 1401–1404.

10. Under the WCA, one of the only exceptions to the employer's immunity from common law liability is found in 77 Pa.C.S. § 501 which provides that, when an employer fails to secure the payment of compensation, *i.e.,* by not carrying the insurance, then the employee

In 1963, the General Assembly addressed the issue of intentionally inflicted harm in its amendments to both the WCA and the ODA. Section 205 of the ODA provides:

### § 1305. Liability of fellow *employe*

If disability or death is compensable under this act, *a person shall not be liable to anyone at common law or* otherwise on account of such disability or death for any act or omission occurring while such person was in the same employ as the person disabled or killed, *except for intentional wrong.* 1939, June 21, P.L. 566, § 205, added 1963, Aug. 24, P.L. 1174, § 1. (Emphasis added.)[11]

The significance of this provision indicates that the legislature, in its grant of immunity to fellow employees, expressly excluded intentional misconduct. However, in the immunity provided for the employer, under section 303 of the ODA no such exception was engrafted. This omission cannot be lightly ignored. It is obvious that the legislature considered the issue of intentional torts and created an exception to the statutory immunity when intentional harm was caused by the co-employee. The legislature's failure to provide a similar exclusion to the immunity provided for the employer must be deemed to have been deliberate. *See, e.g., Pennsylvania Agricultural Co-op Marketing Association v. Ezra Martin Co.,* 495 F.Supp. 565 (M.D.Pa.1980); *Commonwealth ex rel. Maurer v. Witkin,* 344 Pa. 191, 25 A.2d 317 (1942). This conclusion is further bolstered by the exception to the immunity in section 205 of the WCA

may proceed either under the Act or in a suit for damages. It is important to note that, if an employee proceeds at common law, the common law defenses of contributory negligence assumption of the risk and the fellow servant doctrine are abolished in accordance with 77 Pa.S. § 41.

11. A comparable provision was added to the WCA. Section 205 provides:

### § 72. Liability of fellow employe

If disability or death is compensable under this act, a *person shall not be liable to anyone at common law* or otherwise on account of such disability or death for any act or omission occurring while such person was in the same employ as the person disabled or killed *except for intentional wrong.*
1915, June 2, P.L. 736, art. II, § 205, added 1963, Aug. 24, P.L. 1175, § 1. (Emphasis added.)

regarding fellow employees with a corresponding absence of such an exclusion under section 303 of the WCA. This would suggest a clear legislative judgment not to recognize an intentional tort exception for employers. In view of this clear legislative expression, the Superior Court's theory that the exclusion of intentional misconduct under sections 205 of the ODA and the WCA exhibits a legislative "general intention ... that the Act should not operate as a shield" [12] of immunity for intentional torts flies in the face of a clear legislative scheme to the contrary.

In this Court's decision in *Poyser, supra,* we expressly held under similar provisions of the WCA that there was no intentional tort exception to the exclusivity provision of the WCA. That decision, filed in March 1987, apprised the General Assembly that the WCA, as interpreted by this Court, preserved no common law cause of action for intentionally inflicted harm. Now, two years later, the legislature has not acted in any way, nor in any manner which would indicate that that decision did not reflect their intention. Because of the similarity of the two provisions, our action in *Poyser* was a clear signal that the same result would likely obtain under the ODA when and if the question was raised. The legislature has not attempted, since our decision in *Poyser,* to indicate that such an interpretation, although proper under the WCA, should not be applicable to the ODA. Since we find no basis in the statutory scheme to make such a distinction, we must accept the view that the legislature intended the same result under the ODA.

The suggestion in Pennsylvania that there is an intentional tort exception to the exclusivity provision of the WCA was first raised in a 1963 decision of the Superior Court. *Readinger v. Gottschall,* 201 Pa.Super. 134, 191 A.2d 694 (1963). In that decision, the Superior Court held that an employee injured by an employer's physical assault could pursue a common law action for trespass, notwithstanding the exclusivity provision. The *Readinger* court reached its

---

12. *Barber v. Pittsburgh Corning Co., supra,* 365 Pa.Super. at 255, 529 A.2d at 495.

conclusion based upon the former statutory language that predicated recovery under the Act upon the occurrence of an "accident" in the course of employment.[13] The underlying reasoning employed for this result was that an intentional act does not constitute an "undesigned event" as is implied by the term "accident," and therefore assaults must be considered acts outside the scope of the statute. A number of subsequent cases in this Commonwealth followed the reasoning in *Readinger, supra,* and allowed employees to pursue common law actions against their employers for injuries sustained as a result of intentional tort. *See, e.g., Brooks v. Marriott Corp.,* 361 Pa.Super. 350, 354, 522 A.2d 618, 621 (1987); *McGinn v. Valloti,* 363 Pa.Super. 88, 525 A.2d 732 (1987); *Jones v. P.M.A. Insurance Co.,* 343 Pa.Super. 411, 414, 495 A.2d 203 (1985); *Brooks v. Marriott Corporation,* 44 Pa.D. & C.3d 646 (1986); *Blough v. Three S. Coal Company,* 26 Pa.D. & C.3d

13.
§ 411. "Injury," "personal injury," and "injury by an accident in the course of his employment" defined
The terms *"injury"* and "personal injury," as used in this act, shall be construed to mean only violence to the physical structure of the body, and such disease or infection as naturally results therefrom; .... The term *"injury by an accident in the course of his employment,"* as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; but shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment. 1915, June 2, P.L. 736, art. III, § 301(c); 1937, June 4, P.L. 1552, § 1; 1939, June 21, P.L. 520, § 1. (Emphasis supplied.)
An injury, in order to be compensable under the Act, must have been the result of an employment related accident. *See, e.g., Lambing v. Consolidation Coal Co.,* 161 Pa.Super. 346, 54 A.2d 291 (1947); *Ceccato v. Union Collieries Co.,* 141 Pa.Super. 440, 15 A.2d 401 (1940); *Dolinar v. Pittsburgh Terminal Coal Corporation,* 140 Pa.Super. 543, 14 A.2d 871 (1940).

243 (1982); *Schneider v. Rohm and Haas Co.*, 23 Pa.D. & C.3d 428 (1982); *Shane v. Bethlehem Steel Co.*, 61 Pa.D. & C.2d 312 (1972). Other cases declined to follow the decisional teaching of *Readinger, supra, see, e.g., Pingieleski v. United Parcel Service*, 133 Pittsburgh L.J. 342, *affirmed* 354 Pa.Super. 636, 508 A.2d 346 (1986). (Even if an injury was intentionally caused by an employer, it would be compensable solely under the WCA.); *Higgins v. Clearing Machine Co.*, 344 Pa.Super. 325, 329, 496 A.2d 818 (1985) (effect of 1972 amendments on intentional tort exception is unclear); *Hogey v. Morello Excavating Company*, 28 Pa.D. & C.3d 451 (1984) (the 1972 amendments to the WCA superceded any authority *Readinger* may have had).

The viability of any "intentional tort exception" in Pennsylvania has at best been unclear. This Court has never acknowledged or recognized such an exception to the exclusivity provisions of our workmen's compensation statute. This Court has addressed the concept of an intentional tort exception just once. *See e.g., Evans v. Allentown Portland Cement Co.*, 433 Pa. 595, 252 A.2d 646 (1969), (a decedent who was killed as a result of his employer's alleged willful and unlawful conduct was bound to the provisions of the WCA and was precluded from bringing an action at common law). Any validity to the analysis in *Readinger* has been lost when the "accident" concept was discarded by the legislature in 1972 and replaced with the "injury" approach. *See, e.g., Krawchuk v. Philadelphia Electric Co.*, 497 Pa. 115, 439 A.2d 627 (1981); *Firestone Tire & Rubber Co. v. Workmen's Compensation Appeal Board*, 40 Pa.Cmwlth. 142, 396 A.2d 902 (1979); *R.F. Post, Inc. v. Workmen's Compensation*, 32 Pa.Cmwlth. 203, 378 A.2d 1030 (1977). Pertinent to this particular inquiry, the concept of accident was never applicable to the ODA. Thus the rationale employed in *Readinger* would clearly have no foundation in the ODA setting.

As previously stated, the legislative intent to provide a blanket exclusivity for employers under the ODA cannot be

ignored. Attempts to induce the Court through policy arguments to the contrary must be unavailing. We are constrained to follow the clear legislative mandate notwithstanding the appealing quality of the arguments marshalled to support a contrary approach. Once the legislative judgment has been made, we are bound to accept it. *See, Mt. Lebanon v. County Board of Elections of Allegheny County*, 470 Pa. 317, 368 A.2d 648 (1977); *Leahey v. Farrell*, 362 Pa. 52, 66 A.2d 577 (1949). It is essential to the proper functioning of our system of government that each branch of government fulfills its constitutionally prescribed responsibilities and avoids intruding into areas vested in the sister branches of government. Moreover, that which cannot be done directly should not surreptitiously be achieved through a tortured interpretation of legislative pronouncements.

Accordingly, the order of the Superior Court is reversed and the order of the entry of summary judgment is hereby reinstated.

LARSEN, J., files a dissenting opinion in which PAPADAKOS, J., joins.

LARSEN, Justice, dissenting.

I dissent, and in support thereof, I reiterate the position that I set forth in my dissenting opinion in *Poyser v. Newman & Co., Inc.*, 514 Pa. 32, 522 A.2d 548 (1987) (Larsen, J., dissenting). In addition, I rely upon the well-considered opinion of Superior Court Judge Brosky, and I would find, as did Judge Brosky, that *Poyser, supra*, can be distinguished from the instant action.

Accordingly, I would affirm the orders of Superior Court which reversed the orders of the Court of Common Pleas of Allegheny County granting summary judgment.

PAPADAKOS, J., joins in this dissenting opinion.