Mary Kay SEDLACEK, Executrix of the Estate of Edward Sedlacek, and Mary Kay Sedlacek in her own Right, Appellants

v.

A.O. SMITH CORPORATION, A.W. Chesterton, Alcoa, Inc., Allied Glove Corporation, American Optical Corporation, Anchor Packing Company, Argo Packing Company, Atlas Industries, Inc., B.F. Goodrich Company, Cashco, Inc., CBS Corporation, Crane Co., Crown Cork & Seal, Dana Corporation, Dezurik, Inc., Durabla Manufacturing Co., E.W. Bliss Company, Earl B. Beach Company, Eichleay Corporation, F.B. Wright Company Of Pittsburgh, Flowserve Corporation, f/k/a Byron Jackson, Foster Wheeler, The Gage Company, Garlock Inc., General Electric Company, General Refractories Co., George V. Hamilton, Inc., Goodyear Tire & Rubber Company, Gould Pumps, Inc., Green Tweed & Company, Hinchliffe & Keener, Inc., Honeywell, Inc., Hunter Sales, I.U. North America, Industrial Holdings Company, Ingersoll Rand, ITT Industries, Kentile Floors, Inc., M.S. Jacobs & Associates, Inc., McCarls,

Inc., Melrath Supply & Gasket Co., Metropolitan Life Insurance Company, Mobile Oil Corporation, Nagle Pumps, Owen–Illinois, Power Piping, Safety First Industries, Inc., The Sager Corporation, Sealite, Inc., Sepco Corporation, Stockham Valves & Fittings, Taylored Industries, Union Carbide Corp., Uniroyal, Inc., Viacom, Washington Group International.

Mary Lou Crooks, Executrix of The Estate of Frank C. Crooks, Deceased, and Mary Lou Crooks, in her own Right, Appellants

v.

A.O. Smith Corporation, Alcoa, Inc., Allied Glove Corporation, American Optical Corporation, Anchor Packing Company, Argo Packing Company, Atlas Industries, Inc., B.F. Goodrich Company, Borg–Warner, Cashco, Inc., Certainteed Corporation, Crane Co., Crown Cork & Seal, Dana Corporation, Dezurik, Inc., Durabla Manufacturing Co., E.W. Bliss Company, Earl B. Beach Company, Eichleay Corporation, F.B. Wright Company Of Pittsburgh, Flowserve Corporation, f/k/a Byron Jackson, Garlock Inc., General Electric Company, General Refractories Co., George V. Hamilton, Inc., Goodyear Tire & Rubber Company, Gould Pumps, Inc., Greene Tweed & Company, Hinchliffe & Keener, Inc., Honeywell, Inc., Hunter Sales, I.U. North America, Industrial Holdings Company, Ingersoll Rand, ITT Industries, Kentile Floors, Inc., M.S. Jacobs & Associates, Inc., McCarls, Inc., Melrath Supply & Gasket Co., Metropolitan Life Insurance Company, Mobile Oil Corporation, Nagle Pumps, Oglebay Norton, Owens–Illinois, Power

Piping, Safety First Industries, Inc., The Sager Corporation, Sealite, Inc., Sepco Corporation, Stockham Valves & Fittings, Taylored Industries, Union Carbide Corp., Uniroyal, Inc., Viacom, Washington Group International.

Superior Court of Pennsylvania.

Argued Dec. 2, 2008.
Filed Feb. 25, 2010.

Jason T. Shipp, Pittsburgh, for Sedlacek, Edward and Mary Kay and Crooks, Mary Lou and Frank, Crooks, appellants.

Scott D. Livingston, Pittsburgh, for Alcoa, appellee.

BEFORE: FORD ELLIOTT, P.J., DONOHUE and COLVILLE,* JJ.

OPINION BY FORD ELLIOTT, P.J.:

¶ 1 These appeals are from orders granting summary judgment in favor of appellee, ALCOA, in actions for personal injury in the nature of occupational or work-related disease. As set forth *infra* and in recognition of this court's recent decision in *Ranalli v. Rohm and Haas Co.,* 983 A.2d 732 (Pa.Super.2009) (reargument denied), we affirm.

¶ 2 The facts underlying the present appeals are neither extensive, nor complex, and yet very sad. Frank C. Crooks and Edward Sedlacek were both employed by ALCOA and later, long after their employment terminated, and long after either man had had an occupational exposure to asbestos, developed mesothelioma,[1] from which they both succumbed. Mr. Crooks was a tool and die maker for ALCOA from 1945 to 1975, was diagnosed with mesothelioma on October 11, 2004, and died from that disease on February 20, 2005. Mr. Sedlacek worked at ALCOA from 1956 to 1993, was diagnosed with mesothelioma on May 31, 2005, and died from that disease on November 15, 2006.

¶ 3 Both parties filed personal injury actions in the Court of Common Pleas of Westmoreland County, contending that the contraction of mesothelioma was due to ALCOA's negligence. Ostensibly, efforts at recovery in tort were undertaken because the parties were of the well-grounded opinion that the disability/deaths suffered were not compensable under either the Workers' Compensation Act

---

* Retired Senior Judge assigned to the Superior Court.

1. Mesothelioma is defined as:
   A malignant tumor of the mesothelium. The mesothelium is the thin lining on the surface of the body cavities and the organs that are contained within them. Most mesotheliomas begin as one or more nodules that progressively grow to form a solid coating of tumor surrounding the lung, abdominal organs, or heart.
   Mesothelioma most commonly occurs in the chest cavity and is associated with exposure to asbestos in up to 90% of cases. http://www.medterms.com/script/main/art. asp?articlekey=12066

("WCA"), 77 P.S. § 1 *et seq.*, or the Occupational Disease Act ("ODA"), 77 P.S. § 1201 *et seq.*, due to language in those acts limiting recovery to injury or disease manifesting within a certain period of time from the date of last exposure/employment. Subsequently, ALCOA filed a motion for summary judgment contending that the plaintiff's cause of action was barred by provisions in the WCA and ODA, "which provide employees compensation for disability or death occurring during their employment without regard to negligence in exchange for employer immunity from common law suits filed by employees." (ALCOA's motion for summary judgment, at 2.) The court agreed and entered orders granting summary judgment to ALCOA. Following settlement prior to trial with the remaining named defendants, this order was made final and the present appeals followed.

¶ 4 It is clear that under the definitions provided in the WCA and ODA, mesothelioma is an occupational disease. As it applies to the present case, the WCA defines occupational disease thusly:

> The term 'occupational disease,' as used in this act, shall mean only the following diseases.
>
> \*     \*     \*
>
> (*l*) Asbestosis and cancer resulting from direct contact with, handling of, or exposure to the dust of asbestos in any occupation involving such contact, handling or exposure.

77 P.S. § 27.1. Moreover, the Commonwealth Court has found mesothelioma to be an "occupational disease" under the WCA. *Sporio v. Workmen's Comp. Appeal Bd. (Songer Constr.)*, 692 A.2d 286 (Pa. Cmwlth.1997), *reversed on other grounds*, 553 Pa. 44, 717 A.2d 525 (1998). Similarly, the ODA lists several recognized occupational diseases without including mesothelioma, but further provides a qualifying catch-all definition which has been viewed as including that disease:

### § 1208. Occupational diseases enumerated

The term 'occupational disease,' as used in this act, shall mean only the following diseases:

\*     \*     \*

(n) All other occupational diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are peculiar to the industry or occupation, and (3) which are not common to the general population.

77 P.S. § 1208.

¶ 5 Additionally, both the WCA and ODA contain provisions purporting to establish the compensation schemes established in the WCA and ODA as "exclusive" remedies for an employee, as against his employer, for a work-related injury or disability. The WCA provides:

### § 481. Exclusiveness of remedy; actions by and against third party; contract indemnifying third party

(a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

77 P.S. § 481. The corresponding provision of the ODA states:

### § 1403. Acceptance; persons bound

Such agreement shall constitute an acceptance of all the provisions of article three of this act, and shall operate as a surrender by the parties thereto of their

rights to any form or amount of compensation or damages for any disability or death resulting from occupational disease, or to any method of determination thereof, other than as provided in article three of this act. Such agreement shall bind the employer and his personal representatives, and the employe, his or her wife, or husband, widow or widower, next of kin, and other dependents.

77 P.S. § 1403.

¶ 6 Whether technically correct or not, the above sections have been generally regarded as imbuing an employer with "immunity" from civil actions by an employee for a "work related" injury or disability. In an argument whose appeal is in its simplicity, ALCOA argues that given the wording of the exclusive remedy provisions, and the fact that mesothelioma is recognized as an occupational disease within the meaning of the Acts, the WCA/ODA are the exclusive vehicles for compensation for loss occasioned by an employee's contraction of mesothelioma and there is no room for interpretation. Thus, a personal injury action cannot be maintained in the court of common pleas. While there is a facial appeal to ALCOA's position, the stumbling block in the argument is that the exclusivity provisions have not been interpreted as providing an all encompassing immunity to an employer from suit for work-related occupational disease. This fact has not escaped appellants' notice. In fact, their argument on appeal is largely grounded upon this fact.

¶ 7 In *Greer v. United States Steel Corp.*, 475 Pa. 448, 380 A.2d 1221 (1977), "common law recovery was sought by an employee for a disease, pulmonary fibrosis, allegedly contracted in the course of employment due to the negligence of the employer." *Id.* at 450, 380 A.2d at 1222. The employee filed the action in common pleas court simultaneously with the filing of a claim petition for workmen's compensation, perhaps because pulmonary fibrosis was not a specifically enumerated disease under either the WCA or the ODA. U.S. Steel sought judgment on the pleadings, arguing that the employee's exclusive remedy was under the ODA, but was denied. An interlocutory appeal brought the matter to Pennsylvania's appellate courts. When the matter came before the Pennsylvania Supreme Court, the court acknowledged that "[t]he initial undisputed premise is that common law recovery is barred if recovery can be had under the Act." *Id.* at 451, 380 A.2d at 1222. However, the court further reasoned that "[t]he converse of the initial premise would seem to follow, *i.e.,* recovery at common law would not be barred if recovery could not be had under the Compensation Act." *Id.* Although the entire civil action rested upon the premise that the disease, pulmonary fibrosis, was "work related" and precipitated by the negligence of Greer's employer in allowing Greer to be exposed to harmful substances, *Greer* stands for the proposition that despite the connection of the disease to the plaintiff's work a civil action could be maintained against the employer should recovery be unavailable under the WCA/ODA.

¶ 8 A similar result was reached in *Lord Corp. v. Pollard,* 548 Pa. 124, 695 A.2d 767 (1997). In *Pollard,* the plaintiff's husband had worked as a maintenance mechanic for Lord Corporation prior to his death in 1992. Plaintiff filed a wrongful death action against Lord, claiming that her husband died as a result of complications from malignant nodular lymphoma which had been acquired through his exposure to "numerous toxic and deadly chemicals," *id.* at 127, 695 A.2d at 768, while employed in Lord's chemical products division. Pollard alleged in her complaint that her husband's disease is "not peculiar to the aero-

space component manufacturing industry or to the decedent's occupation as a maintenance mechanic." *Id.* at n. 1. Moreover, it was alleged that the disease was "common to the general population." *Id.* As a consequence, and accepting these allegations as true, disability or death resulting from this disease would not be compensable under either the WCA or the ODA as the lymphoma would not meet the definition of an "occupational disease." (*See* 77 P.S. § 1208.)

¶ 9 In response to the filing of the complaint, Lord filed preliminary objections in the nature of a demurrer asserting that the cause of action was barred by the exclusivity provisions of the WCA and ODA. Those preliminary objections were granted and Pollard appealed. On appeal, we reversed, reasoning that the granting of a demurrer was premature as there had been no determination of compensability under the WCA or ODA, and as compensability under those Acts could not be resolved merely from the pleadings. The judgment of this court was appealed further, and the supreme court affirmed, in an evenly divided decision, that the matter must be stayed "pending final disposition of the workmen's compensation proceedings." *Id.* at 130, 695 A.2d at 769. The reason for this holding was the court's view that if the "decedent's nodular lymphoma is compensable, then [a] common law action is barred [but] if the facts do not warrant such a finding, [a] common law cause of action may be maintained." *Id.* at 129, 695 A.2d at 769.

¶ 10 Returning to ALCOA's plain-language argument, the above decisions make clear that the exclusivity provisions of the WCA and ODA have not been construed as providing an absolute immunity from a civil action for work-related injury/disability/death. Moreover, as most of the key decisions issued on this subject have been handed down by the Pennsylvania Supreme Court, a court of higher authority than this court, despite any facial appeal to the argument, we simply cannot begin and end our inquiry with the language of the key provisions of the Acts set forth above. Rather, the interpretative endeavor must incorporate the learned decisions of our supreme court. Considering those decisions, the pivotal inquiry becomes whether an injury is merely covered under the Acts or is both covered and compensable under the Acts?

■ ¶ 11 ALCOA does not dispute that the "employer immunity" provisions, as currently interpreted, provide less than blanket immunity from suit for work-related disability/death, but rests its position upon a curious, and possibly fortuitous, distinction between coverage and compensability. Notably, as mentioned above, both the WCA and ODA contain provisions that purport to limit compensation for disability or death resulting from occupational disease to disability/death occurring within a defined period from the date of last employment.[2] In the case of the WCA, it is 300 weeks, 77 P.S. § 411(2), and in the

---

2. Various cases have referred to these provisions as a "statute of repose." At least one commentator has contended that this is a misnomer and that a true statute of repose extinguishes a right to recover, already accrued, which contrasts with a statute of limitations, which does not extinguish the right to recover but is rather an affirmative defense that can act to bar a remedy. *See* D. Torrey, *Time Limitations in Pennsylvania Workmen's Compensation and Occupational Disease Acts: Theoretical Doctrine and Current Applications.* 24 Duq. L.Rev. 975, 984 n. 44 & 1000–1001 (1986). What is left is the delineation of a substantive element of the right to recovery, effectively a "limitation" on recovery itself. For purposes of our discussions herein, we shall refer to these two sections as "limiting provisions."

case of the ODA, it is four years. 77 P.S. § 1401(c). Regardless of how one terms these provisions—as statutes of repose or limiting provisions—or how they logically operate to deny recovery under the Act, it is clear that recovery cannot be had for individuals such as found here, who contract mesothelioma many years after employment terminated.

¶ 12 In light of these "limiting" provisions, ALCOA argues that although the disabilities/deaths at the heart of the civil suit are not compensable under the Acts due to these provisions, the disease in question, mesothelioma, is a "covered" disease under the Acts. Because the disease is a "covered disease," ALCOA argues, compensation is limited by the exclusivity provisions to the compensation provided under the Acts and a suit in trespass is unavailable. Of course, under the facts of the present case, and many other cases bearing similar facts, the recovery under the Acts is none. In support of this position, ALCOA points out that the cases cited by appellants involve occupational diseases that are clearly not covered under the Acts.

¶ 13 ALCOA's position is well taken. *Greer* involved pulmonary fibrosis and *Pollard* involved lymphoma. Despite the allegations that the diseases were caused by occupational exposure to harmful substances, neither of these two diseases met the criteria for being "occupational diseases" as defined in the Acts as they are either not peculiar to an industry or occupation or are common to the general population. As such, *Greer* and *Pollard* are technically distinguishable by the fact that the diseases themselves were not covered by the Acts, which would then dictate the conclusion that an action at common law could be maintained. The question created by this stance is whether the distinction just mentioned is too narrow of a reading

of the relevant case law and the principles enunciated therein. Unfortunately, due to perhaps less than fully considered choices of wording, determining the precise import of this distinction is not a perfunctory task.

¶ 14 The case that would appear to support appellants' position most of all, and simultaneously defeat ALCOA's, is *Greer.* The choice of language utilized in *Greer* suggests that application of the exclusivity provision is focused upon compensation for disability and not just "coverage" of the disease. In perhaps the key assessment in that case, the court stated, "recovery at common law would not be barred if recovery could not be had under the Compensation Act." *Greer,* 475 Pa. at 451, 380 A.2d at 1222. Since, in this broad statement of legal principle, the court used the term "recovery" and did not state "if the disease is covered under the Act," it could be plausibly argued that *Greer* stands for the proposition that if recovery is unavailable under the Acts, a suit can be maintained in common pleas court regardless of whether or not the disease itself is "covered."

¶ 15 In contrast to *Greer,* in some cases, the terms "coverage," "cognizable," "recovery," and "relief" have been used with seeming interchangeability. For instance, in *Boniecke v. McGraw–Edison Co.,* 485 Pa. 163, 167, 401 A.2d 345, 346–347 (1979) (emphasis added), the court stated:

> Appellants also contend that summary judgment should nevertheless be entered because appellee's maladies are compensable under the Acts and the court below is therefore without jurisdiction to hear this particular case. Appellants are correct in stating that if appellee's **diseases are covered by the Acts**, then appellee's common law action does not exist. However, there is nothing in the record, aside from appellants' mere allegations, which would indicate that

**appellee is entitled to relief** under the Acts.

¶ 16 Similar intermixing of terms is found in *Pollard*, where the court stated: an employee's common law action is not barred by the exclusivity provisions of either the WCA or the ODA until there has been a final determination that the injury or **disease in question is cognizable** under either Act. ... Thus, in the present case, if it is determined that decedent's nodular lymphoma **is compensable**....

*Pollard*, 548 Pa. at 129, 695 A.2d at 769 (emphasis added).

¶ 17 If the choice of language used in *Greer* signaled that compensability was the key to application of the exclusivity provision, the choice of language in *Boniecke* and *Pollard* sent a mixed signal that undermines the significance of *Greer*'s linguistical choice. While apparently placing no great significance to the choice of words/phrases "compensable," "entitled to relief," and "covered" or "cognizable," the fact that mesothelioma is "covered" or "cognizable" by the Acts but, in this case, is not "compensable," and appellants are not "entitled to relief," is the precise distinction ALCOA relies upon to claim they have no liability in a common law suit. Thus, while having no real significance in those cases, here the distinction is crucial and requires us to look to key language from opinions discussing the exclusivity provisions of the Acts to answer the critical question.

¶ 18 When called upon to discuss the exclusivity provisions, the supreme court has been rather resolute in declaring that "The Workmen's Compensation Act provides the exclusive means by which a covered employee can recover against an employer for injury in the course of his employment." *Kline v. Arden H. Verner Co.*, 503 Pa. 251, 253, 469 A.2d 158, 159

(1983). The hard stance is explained by the court's assessment, in *Tsarnas v. Jones & Laughlin Steel Corp.*, 488 Pa. 513, 519, 412 A.2d 1094, 1097 (1980), that the "purpose of this kind of legislation was to restrict the remedy available to an employee against the employer to compensation, and to close to the employee, and to third parties, any recourse against the employer in tort for negligence." The rationale for the hard-line stance is based in the fact that "the exclusivity provisions of these acts are 'a version of the historical *quid pro quo* that employers received in exchange for being subjected to a statutory no-fault system of compensation for worker injuries,'" *Barber v. Pittsburgh Corning Corp.*, 521 Pa. 29, 35, 555 A.2d 766, 769 (1989), and is viewed as such a strong antecedent principle that the exclusivity provision has been found to preclude even suits by employees alleging that the injuries were "intentionally" inflicted. *Id.*

¶ 19 Additionally, the supreme court's approach has not changed even when considering other circumstances where no recovery was available under the Acts. In *Kline*, the court found the exclusivity provision precluded a suit in common pleas court for impotence that had been caused by a work-related injury even though there was no recovery for that injury under the WCA. Similarly, in *Scott v. C.E. Powell Coal Co.*, 402 Pa. 73, 166 A.2d 31 (1960), the court held that the exclusivity clause precluded recovery in tort against an employer for injury resulting in loss of taste and smell. In *Kline*, the court further noted with approval the Third Circuit's decision in *Hartwell v. Allied Chemical Corp.*, 457 F.2d 1335 (3rd Cir.1972), which, "applying Pennsylvania law, held that disfigurement, not covered by workmen's compensation, provided no remedy against an employer. Consistent with a

plain reading of the Act, its intent and purpose, we have held that workmen's compensation is the exclusive remedy for job related injuries." *Kline*, 503 Pa. at 254, 469 A.2d at 159.

■ ¶ 20 In short, in an assessment that presages appellants' second issue, the legislature, by enacting the WCA and ODA, chose to abolish a cause of action against a class of defendants (employers), for a certain type of legal action (personal injury actions for employment-related injury). As a replacement to the cause abolished, the legislature installed an administrative compensatory process whereby employees could be recompensed for injury without a showing of fault. However, that administrative remedy is not unrestricted and contains certain limitations, limitations which, unfortunately for appellants, and others similarly situated, preclude recovery in their particular circumstance.

¶ 21 Turning to this issue raised by appellants, in addition to their claim that the Acts do not preclude a common law action against ALCOA, appellants argue in the alternative that if the Acts are construed to preclude their common law action, then the exclusivity provision violates the Due Process and Equal Protection clauses of the Fourteenth Amendment and violates the Remedies Clause of the Pennsylvania Constitution. We disagree.

■ ¶ 22 There is no question that, as currently interpreted, the exclusivity clause, in most cases, effectively abolishes the common law tort action against one's employer for work-related injury. Nevertheless, this does not mean that Article 1, Section 11 of the Pennsylvania Constitution has been violated. That provision reads:

### § 11. Courts to be open; suits against the Commonwealth

All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay....

Pennsylvania Constitution, Article 1, § 11. Despite the express language of Article 1, Section 11, the Remedies Clause has not been judicially interpreted to prevent the legislature from abolishing previously recognized causes of action.

¶ 23 In *Singer v. Sheppard*, 464 Pa. 387, 346 A.2d 897 (1975), the supreme court considered the constitutionality of the No Fault Act, which explicitly provided for a partial abolishment of tort liability for injury arising out of the use or maintenance of a motor vehicle. On appeal, appellant argued that the No Fault Act deprived him of his right of access to the courts and violated the Remedies Clause. In upholding the constitutionality of the No Fault Act, the court stated: "Nothing in Article I, Section 11 prevents the legislature from extinguishing a cause of action." 464 Pa. at 400, 346 A.2d at 903.[3] The court relied upon the above language in *Kline* to defeat a similar challenge leveled against the WCA regarding the lack of a tort remedy for the employee's impotence, and further commented that "[t]o change, alter or abolish a remedy lies within the wisdom and power of the legislature and in some instances, the courts." *Kline*, 503 Pa. at 255, 469 A.2d at 160.

¶ 24 The court further dispelled an argument in *Kline* that referenced prior statements of the court, particularly one from *Dolan v. Linton's Lunch*, 397 Pa. 114, 152 A.2d 887 (1959), to the effect that abolishing a cause of action without simultaneous-

**3.** Although *Singer* was a plurality decision, the supreme court has quoted the above passage in majority decisions, giving the pronouncement the force of law.

ly providing a statutory remedy might violate the Remedies Clause. To defeat the appellant's argument, the court quoted directly from *Dolan* stating, "[t]he substituted remedy need not be the same." *Kline*, 503 Pa. at 255, 469 A.2d at 160.

¶ 25 The present case combines principles at play in *Sherwood v. Elgart*, 383 Pa. 110, 117 A.2d 899 (1955), and *Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 382 A.2d 715 (1978). *Sherwood* considered a statute that eliminated the liability of an innkeeper for damage to the personal property of his guests "caused by fire, not intentionally produced by the hotel proprietor or innkeeper or his servants." *Sherwood*, 383 Pa. at 113, 117 A.2d at 901. *Freezer Storage* considered the constitutionality of a 12–year limitations provision, frequently termed a statute of repose, on recovery of damages for any "deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property." *Freezer Storage*, 476 Pa. at 273, 382 A.2d at 717 n. 2.

¶ 26 In *Sherwood*, the court, without any real elaboration, found the constitutional challenge based upon an asserted violation of the Remedies Clause to be without merit, thus validating the legislature's ability to provide immunity to a select class of defendant. In *Freezer Storage*, with respect to Article 1, Section 11, the court "disagreed" with the appellant's contention that that "provision prohibits the Legislature from abolishing a right of action existing at common law without substituting some other means for redress." *Freezer Storage*, 476 Pa. at 279, 382 A.2d at 720. Noting other instances where the legislature had abolished causes of action in whole or in part, the court stated:

This Court would encroach upon the Legislature's ability to guide the development of the law if we invalidated legislation simply because the rule enacted by the Legislature rejects some cause of action currently preferred by the courts. To do so would be to place certain rules of the 'common law' and certain nonconstitutional decisions of courts above all change except by constitutional amendment. Such a result would offend our notion of the checks and balances between the various branches of government, and of the flexibility required for the healthy growth of the law.

*Id.*, 476 Pa. at 281, 382 A.2d at 721. Thus, *Freezer Storage* stands for the proposition that the legislature can impose a time limitation that will effectively defeat a cause of action before it even accrues.

■ ¶ 27 Like *Sherwood*, in instituting the WCA and ODA, the legislature has crafted a partial abolition of previously existing common law actions against certain defendants.[4] However, unlike in *Sherwood*, with respect to the potential tort liability of an employer to its employee, the legislature substituted a no-fault compensatory system that provides greater coverage than would normally prevail under common law tort. Like *Freezer Storage*, the no-fault compensation framework implemented instead of tort liability places a limitation on recovery, requiring a compensable injury to accrue within a certain period of time from a prior triggering event. Succinctly stated, and contrary to appellants' position, "application of the provisions of the Act does not deny access to the courts, rather it limits recovery as contemplated by the legislative scheme." *Ranalli, supra,* at ¶ 8. In consideration of

---

4. Of course, the WCA and ODA provide immunity to only an employer. Appellants are not precluded from seeking tort recovery against other possible defendants who may be responsible for the disabilities in question.

the above precedent, Article 1, Section 11 is not offended by such legislative action.

¶ 28 Appellants further contend that exclusivity provisions violate the due process clause.[5] The Commonwealth Court has held that the exclusivity provision of the WCA does not violate due process, even when, under the facts of the case, no recovery is provided by the Act, *Guess v. Workmen's Compensation Appeal Board,* 77 Pa.Cmwlth. 319, 466 A.2d 1098 (1983), and has similarly upheld a due process challenge to the limitations period. *Antonucci v. Workmen's Compensation Appeal Board,* 133 Pa.Cmwlth. 273, 576 A.2d 401 (1990). In *Guess,* the Commonwealth Court further noted that several other jurisdictions with similar limitations provisions had ruled that their provisions did not offend the Due Process Clause. Thus, the overwhelming weight of authority opposes appellants' position.

¶ 29 One particular aspect weighing into the Due Process analysis is the fact that the Acts are essentially "agreements" between employer and employee. Although agreement occurs by default if an employee does not opt out of the coverage of the Acts,[6] there nevertheless is, in essence, an agreement by employer and employee to supplant common law tort liability with the workmen's compensation framework. In this regard, the supreme court has commented:

> We have ruled that when an employe sustains injuries which bring him within the provisions of the Workmen's Compensation Act, the question as to what amount he is compensated depends on the provisions of the Act, and if that measure yields him nothing, the assumption is that he is nevertheless satisfied with his agreement.

*Scott v. C.E. Powell Coal Co.,* 402 Pa. 73, 77–78, 166 A.2d 31, 34 (1960).

¶ 30 This court is not without compassionate understanding of the ramifications of today's holding. Given the nature of the insidious disease which mesothelioma is, and its inherent lengthy period of latency, many individuals who have or will become afflicted with this disease will find no monetary recovery from their employer either under the WCA or ODA or in common law tort despite the almost unavoidable conclusion that the disease will have been precipitated by their occupational exposure to asbestos.[7] Nevertheless, it is this court's opinion that the conclusion reached herein is a correct application of prevailing law

---

**5.** While appellants also suggest a violation of the Equal Protection Clause, we can discern no true development of that claim in the argument section of appellants' briefs. For instance, appellants never identify the class of individuals who are being discriminated against by the exclusivity/limitations clauses, nor do they discuss the basis for the discrimination and why it fails to pass constitutional analysis. As such, we shall not address that particular challenge.

**6.** *See* 77 P.S. §§ 481 & 1401. Section 481 was amended in 1974. Prior to the amendment, it had read:

> Such agreement shall constitute an acceptance of all the provisions of article three of this act, and shall operate as a surrender by the parties thereto of their rights to any form or amount of compensation or damages for any injury or death occurring in the course of the employment, or to any method of determination thereof, other than as provided, in article three of this act. Such agreement shall bind the employer and his personal representatives, and the employee, his or her wife or husband, widow or widower, next of kin, and other dependents.

77 P.S. § 481.

**7.** It is worth noting that appellants are not those individuals without any remedy inasmuch as they have settled asbestos-related claims against the remaining defendants in this case.

and that our decision today is constrained thereby.

¶ 31 In conclusion, we rely upon this court's recent decision in *Ranalli* which, consistent with our decision today, held that "[s]imply because the injury is not compensable under the Act by virtue of a time limitation does not mean the workers' compensation bar may be overlooked," *Ranalli* at ¶ 8, and that "[t]he time restriction was not established for the purpose of limiting access to the courts, but rather to facilitate the legislature's goal of providing a viable and efficient no-fault system." *Id.* at ¶ 9. We further observe that the *Ranalli* decision has been denied reargument by vote of this court, and undoubtedly the issues presented herein and in *Ranalli* will ultimately be decided with finality by our supreme court. To that end, we offer our analysis today.

¶ 32 Orders affirmed.

¶ 33 DONOHUE, J. files a Concurring Opinion.

CONCURRING OPINION BY DONOHUE, J.:

¶ 1 I agree with the result reached by the Majority because we are bound by the opinion of another panel of this Court in *Ranalli v. Rohm and Haas Co.*, 983 A.2d 732 (Pa.Super.2009). I write separately to note that I would not reach Appellants' argument regarding Article 1, Section 11 of the Pennsylvania Constitution because Article 3, Section 18 sanctions the statutory exclusive remedy provisions that Appellants challenge as unconstitutional.

¶ 2 Article 3, Section 18 of the Pennsylvania Constitution provides,

The General Assembly may enact laws requiring the payment by employers, or employers and employes jointly, of rea-

sonable compensation for injuries to employes arising in the course of their employment, and for occupational diseases of employes, whether or not such injuries or diseases result in death, and regardless of fault of employer or employe, and fixing the basis of ascertainment of such compensation and the maximum and minimum limits thereof, and providing special or general remedies for the collection thereof; but in no other cases shall the General Assembly limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property, and in case of death from such injuries, the right of action shall survive, and the General Assembly shall prescribe for whose benefit such actions shall be prosecuted. No act shall prescribe any limitations of time within which suits may be brought against corporations for injuries to persons or property, or for other causes different from those fixed by general laws regulating actions against natural persons, and such acts now existing are avoided.

Pennsylvania Constitution, Article 3, § 18.

¶ 3 As noted in this Court's decision in *Ranalli*, "[i]t is only because of Article 3, Section [18] and the agreement of the parties that the limited recovery in a Workman's Compensation case is valid." *Ranalli*, at ¶ 7 (citing *Anderson v. Carnegie Steel Co.*, 255 Pa. 33, 99 A. 215 (1916)).

¶ 4 Accordingly, because of Article 3, Section 18, an Article 1, Section 11 analysis is unnecessary.[1]

---

1. The Occupational Disease Act, 77 P.S.   § 1201 *et seq.* ("ODA"), like the WCA, gov-

erns payment to employees for injuries suffered in the course of employment in exchange for no-fault compensation. Like the Workers' Compensation Act ("WCA"), the ODA also limits compensation for injuries to that which is provided by statute. Thus, Article 3, Section 18 of the Pennsylvania Constitution, by its terms, applies equally to the WCA and the ODA. *See Grosser v. L.E. Smith Glass Co.,* 95 Pa.Cmwlth. 450, 505 A.2d 1093, 1096–97 (1986).