# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brad Lee Herold, as Executor of the   :
Estate of William L. Herold   :
  :
      v.   :   No. 998 C.D. 2021
  :   Argued: June 23, 2022
  :
University of Pittsburgh - of   :
Commonwealth System of Higher   :
Education and 3M Company; Abb   :
Motors and Mechanical, Inc. f/k/a   :
Baldor Electric Company; Allied Glove   :
Corporation; A.O. Smith Corporation;   :
Armstrong International, Inc.; Aurora   :
Pump Company; Baltimore Aircoil   :
Company, Inc.; Beazer East, Inc.   :
Individually and as Successor to   :
Koppers Company, Inc., and Successor-   :
in-Interest to Thiem Corporation and   :
Universal Refractories Company; BMI   :
Refractor Services, Inc.; Individually   :
and as Successor-in-Interest to Premier   :
Refractories, Inc., f/k/a Adience, Inc.,   :
Successor-in-Interest to Adience   :
Company, LP, as Successor to BMI,   :
Inc.; Burnham Boiler Corporation   :
n/d/b/a Burnham Commercial; Bryan   :
Steam, LLC; Carrier Corporation; CBS   :
Corporation, a Delaware Corporation,   :
f/k/a Viacom Inc., Successor by Merger   :
to CBS Corporation, a Pennsylvania   :
Corporation, f/k/a Westinghouse   :
Electric Corporation and Westinghouse   :
Air Brake Company; Cleaver Brooks,   :
Inc., f/k/a Aqua-Chem, Inc. d/b/a   :
Cleaver Brooks Division; Crane Co.;   :
Delval Equipment Corporation;   :
Dezurik, Inc.; Donald McKay Smith,   :
Inc.; Dunham-Bush, Inc.; E.E.   :
Zimmerman Company; Eaton   :
Corporation in its own right and as   :
successor to Cutler-Hammer,   :
Incorporated; Eichleay Corporation;   :

Ferro Engineering Division of                   :
on Marine Services Company,                      :
LLC, f/k/a Oglebay Norton Company;               :
Flowserve US, Inc., Individually and as          :
Successor to Byron Jackson                       :
Pumps, FlowserveGestra, Durametallic             :
Corp., Aldrich Pumps; Cameron Pumps;             :
Vogt Valves; Wilson-Snyder                       :
Centrifugal Pump; and Rockwell                   :
Valves; FMC Corporation, Individually            :
and as Successor-in-Interest to Peerless         :
Pump Company, Chicago Pump                       :
Company, Sterling Fluid System, Inc.             :
and former subsidiary Crosby Valve,              :
Inc.; Foseco, Inc.; Foster Wheeler               :
Corporation; Gardner Denver, Inc.;               :
General Electric Company; Grinnell               :
LLC; Goulds Pumps, LLC; I.U.                     :
North America, Inc.; America, Inc.               :
as Successor-by-merger to the Garp               :
Company, f/k/a The Gage Company,                 :
f/k/a Pittsburgh Gage and Supply                 :
Company; IMO Industries, Inc.,                   :
f/k/a IMO Delaval, Inc., f/k/a                   :
Transamerican DeLaval, Inc., f/k/a               :
DeLaval Turbin, Inc., DeLaval Turbin,            :
Inc., DeValco Corporation; Ingersoll-            :
Rand Company; Insul Company, Inc.;               :
ITT Corporation, f/k/a ITT Industries,           :
Individually and as Successor-in-Interest        :
to Bell & Gossett Domestic Pump; J.H.            :
France Refractories Company; Kruman              :
Equipment Company; Mallinckrodt US               :
LLC, in its own right and as Successor-          :
in-Interest to Imcera Group, Inc., and           :
International Group, Inc., and                    :
International Minerals and Chemical               :
Corporation, and as Successor-in-                :
Interest to E.J. Lavino; Mine                    :
Safety Appliances Company, LLC as                :
Successor-in-Interest by Merger with             :
Mine Safety Appliances Company;                  :
Minnotte Contracting Corporation;                :

M.S. Jacobs & Associates, Inc.; :
Nagle Pumps, Inc.; Peerless Industries, :
Inc.; Power Piping Company; Riley :
Power Inc.; Safety First Industries, Inc., :
in its own right and as Successor-in- :
Interest to Safety-First Supply, :
Inc.; Schneider Electric USA, Inc. f/k/a :
Square D Company, in its own right and :
as successor to The Electric Controller :
and Manufacturing (EC&M); Spirax :
Sarco, Inc.; SPX Cooling Technologies, :
Inc., f/k/a Marley Cooling Technologies :
Inc., f/k/a The Marley Cooling :
Company; TACO, Inc. f/k/a Taco :
Heaters, Inc.; The Goodyear Tire :
& Rubber Company; The Gordon-Rupp :
Company; The H.B. Smith Company, :
Inc.; Trane U.S. Inc., Successor-by- :
Merger to American Standard, Inc., :
Union Carbride Corporation; United :
States Steel Corporation; Warren :
Pumps LLC; Weil-McLain Company, :
Inc.; York International Corporation; :
and Zurn Industries, LLC f/k/a Zurn :
Industries, Inc. a/k/a Erie City Iron :
Works :
:
Appeal of: University of Pittsburgh – :
of the Commonwealth System of :
Higher Education :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE LORI A. DUMAS, Judge


OPINION
BY JUDGE DUMAS                    FILED: February 16, 2023


The University of Pittsburgh (University) appeals from the Order

entered by the Court of Common Pleas of Allegheny County (trial court) on May

17, 2021, which denied the University summary judgment.[1]  The University asserts that the common law claims of William L. Herold,[2] which relate to his workplace exposure to asbestos and development of mesothelioma, fall within the purview of The Pennsylvania Occupational Disease Act (ODA).[3]  Thus, according to the University, Herold must file his claims with the Workers' Compensation Board (Board).  Upon review, we conclude that an occupational disease that manifests more than 4 years after an employee's last exposure to hazards causing that disease is not subject to the exclusive remedy mandate of the ODA.[4]  Further, we reject the University's invocation of the doctrine of primary jurisdiction, which may otherwise require Herold to seek relief from the Board in the first instance.  Therefore, we affirm the trial court, albeit on different grounds, and remand so that Herold may proceed with his common law claims against the University.[5]

## I. BACKGROUND[6]

Herold was employed by the University of Pittsburgh, from 1976 until he retired in 2015, as a stationary engineer.  During his employment, Herold was

---

[1] This Court granted the University's Petition for Permission to Appeal from the trial court's interlocutory order pursuant to Chapter 13 of the Pennsylvania Rules of Appellate Procedure.  Cmwlth. Ct. Order, 10/25/21.

[2] William L. Herold passed away on April 30, 2022.  This Court substituted Brad Lee Herold, as Executor of the Estate of William L. Herold, as Appellee in this matter.  Cmwlth. Ct. Order, 8/9/22.

[3] Act of June 21, 1939, P.L. 566, *as amended*, 77 P.S. §§ 1201-1603.

[4] *See* Sections 301(c) and 303 of the ODA, 77 P.S. §§ 1401(c) (limiting "compensable disability or death resulting from occupational disease [as] occurring within four years" after last exposure), 1403 (mandating an exclusive remedy for compensable disability or death).

[5] Following oral argument, Herold filed an application for relief, directing the Court's attention to a recent decision of the Board in an unrelated matter.  Application for Relief, 10/12/22.  We deny the application.

[6] At this stage of the proceedings, we view the record in the light most favorable to the non-moving party.  *See Eleven Eleven Pa., LLC v. State Bd. of Cosmetology*, 169 A.3d 141, 145 (Pa. Cmwlth. 2017).

2

exposed to asbestos until 2004. In April 2019, approximately 15 years after his last exposure to asbestos, he was diagnosed with mesothelioma, a cancer in the lining of the lung. Expert evidence attributed the cause of Herold's mesothelioma to his asbestos exposures.

In October 2019, Herold commenced this action in the trial court to recover damages arising from his development of mesothelioma.[7] In January 2021, the University sought summary judgment based on Section 303 of the ODA, 77 P.S. § 1403. Section 303 is an "exclusivity provision," which purports to limit compensation for an occupational disease as provided under the ODA, which is administered solely by the Board.[8]

The trial court denied the University summary judgment, reasoning: (1) the ODA defines an occupational disease as one that occurs within 4 years of last exposure to the hazards of such disease;[9] (2) Herold's last exposure to asbestos

---

[7] Herold's lawsuit also includes allegations against another former employer, United States Steel, and various producers and/or distributors of asbestos products. Those allegations are not at issue in this appeal.

[8] The University also had cited a similar exclusivity provision found in the Workers' Compensation Act (WCA), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710. However, in accepting this interlocutory appeal, this Court limited the issues on appeal to the applicability of the ODA exclusivity provision. This is because the exclusivity provision in the WCA is inapplicable beyond a statutorily defined 300-week limitations period, which the Supreme Court views as jurisdictional. *See Tooey v. AK Steel Corp.*, 81 A.3d 851, 855 (Pa. 2013).

[9] The trial court's definition of an occupational disease is incorrect. Section 108 of the ODA defines occupational disease by means of an enumerated list of specific diseases. 77 P.S. § 1208. Section 108(n) further provides a catch-all definition:

> All other occupational diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are peculiar to the industry or occupation, and (3) which are not common to the general population. For the purposes of this clause, partial loss of hearing due to noise shall not be considered an occupational disease.

77 P.S. § 1208(n). In defining occupational disease, the trial court's opinion mistakenly quotes from Section 301(c) of the ODA, which defines a limitations period for compensation under the ODA. 77 P.S. § 1401(c).

3

occurred 15 years prior to his diagnosis, far longer than the 4-year limitations period defined in the ODA; and (3) an ODA "savings clause," which provides additional relief beyond the 4-year period for certain enumerated diseases, was inapplicable.[10] *See* Trial Ct. Op., 11/24/21. Thus, the trial court concluded, "the ODA does not apply," and Herold could pursue a civil claim. *Id.* at 3.

The University petitioned this Court for permission to appeal from the trial court's interlocutory order. This Court granted the petition, certifying the following issues:

> Whether the trial court erred or abused its discretion in exercising subject matter jurisdiction over, and refusing to dismiss or stay, Herold's common law claim against the University of Pittsburgh, [1] where Herold has been diagnosed with asbestos-related mesothelioma, an occupational disease as defined in the [ODA], Act of June 21, 1939, P.L. 566, *as amended*, 77 P.S. §§ 1201-1603, and [2] Herold failed to provide the workers' compensation authorities an opportunity to determine whether Herold's claims are within the exclusive remedies of the [ODA].

Cmwlth. Ct. Order, 10/25/21, at 1-2 (unpaginated).

## II. THE PARTIES' ARGUMENTS[11]

The University asserts that the trial court lacks subject matter jurisdiction over Herold's claims because he contracted mesothelioma, an occupational disease subject to the exclusive jurisdiction of the Board. *See* Univ.'s Br. at 11, 13-19. In so doing, the University seeks to distinguish *Tooey v. AK Steel Corp.*, 81 A.3d 851 (Pa. 2013), in which the Supreme Court recognized an exception

---

[10] Section 301(i) of the ODA, 77 P.S. § 1401(i), provides relief beyond the 4-year limitations period for claimants who contract "silicosis, anthraco-silicosis, coal workers' pneumoconiosis, and asbestosis[.]"

[11] The Court has received two Amicus Curiae briefs from interested parties. The arguments contained therein echo those presented.

to a similar exclusivity provision in the WCA. *Id.* at 13-14. The University does not formulate a robust argument in its attempt to persuade this Court that *Tooey* is neither binding nor instructive. Rather, it merely asserts that a similar exception is inapplicable here because "*Tooey* did not address the ODA" or abrogate its administrative processes. *Id.* at 14. In subsequent arguments to this Court, the University suggests that a *Tooey*-type statutory analysis is inappropriate because the relevant language in the WCA and ODA is completely different, further asserting that the time limiting language in the ODA is clear and unambiguous, and that Herold's attempt to draw parallels between the two acts' provisions was "tortured," "convoluted," and "nonsensical." Univ.'s Reply Br. at 4-11.

Pointing to the "grand bargain" or "*quid pro quo*" of the workers' compensation system, which eliminates the uncertainties of litigation in exchange for a no-fault system of defined benefits, the University also criticizes a *Tooey*-type exception as unfair because some workers would be permitted to seek civil remedies, including punitive damages, whereas others would be subject to the various limitations of the ODA. *See* Univ.'s Br. at 15-18. Moreover, according to the University, employers have spent years mitigating the risk of such claims through costly insurance purchases that may not cover such risks if the long-standing statutory scheme is altered. *See id.*[12]

Even if this Court were inclined to recognize an exception to the ODA exclusivity provision, the University asserts that Herold must submit his claims to

---

[12] Beyond this, the University implies that Herold could invoke the ODA savings clause to obtain relief from the Board beyond the 4-year limitations period. *See* Univ.'s Br. at 14-15. We decline to address this argument in detail. As stated, *supra* at note 9, Section 301(i) of the ODA, 77 P.S. § 1401(i), provides relief beyond the 4-year limitations period for claimants who contract "silicosis, anthraco-silicosis, coal workers' pneumoconiosis, and asbestosis[.]" Herold did not contract one of those diseases. Therefore, the trial court properly determined that the ODA savings clause is inapplicable. *See* Trial Ct. Op. at 2-3.

the Board in the first instance. *See* Univ.'s Br. at 19-28. Invoking the doctrine of primary jurisdiction, the University reasons that an employee cannot bypass the administrative processes defined in the ODA and seek relief directly from the courts of common pleas. *See id.* at 24-26. Rather, the doctrine requires judicial abstention to protect the integrity of the regulatory scheme. *Id.* at 26. Thus, according to the University, upon receiving Herold's complaint, the trial court's proper course was to stay adjudication of the civil matter pending exhaustion of an administrative action under the ODA. *See id.* at 25-26.[13]

For his part, Herold responds that the WCA and the ODA share the same purpose and objective and, further, their respective exclusivity provisions are similar. *See* Herold's Br. at 15-17. Proposing a similar textual analysis as employed by the *Tooey* Court, Herold asserts that the ODA only applies to compensable occupational diseases that cause total disability or death within 4 years of an employee's last exposure to a toxin. *See id.* at 18-24. Thus, Herold concludes, his latent mesothelioma is beyond the purview of the ODA because it manifested more than 4 years after his last exposure to asbestos. *See id.* In addition, according to Herold, because his claims clearly lack a statutory remedy, the doctrine of primary jurisdiction does not apply. *Id.* at 41-44. Herold notes the doctrine is flexible, and

---

[13] The University asserts that the trial court further erred by: (1) making factual findings rather than deferring to the Board; (2) finding that the ODA is a chapter of the WCA; (3) considering the limited compensation available under the ODA; and (4) creating a conflict with an unreported and non-precedential federal decision interpreting Pennsylvania law. *See* Univ.'s Br. at 27-38. At this stage of the proceedings, the trial court has not made factual findings; thus, the University's claim is without merit. The second and third assertions have merit and constitute additional errors by the trial court. However, in light of our disposition, they are harmless. The fourth, in which the University cites *Data v. Pennsylvania Power Company* (W.D. Pa., No. 19-879, filed 3/24/21), 2021 WL 1115876, is not persuasive. *Data* is an unpublished decision from a federal, trial-level court; it is not binding on this Court.

6

in this case, judicial deference to administrative proceedings is not warranted. *See id.* [14]

### III. ANALYSIS[15]

#### A.  An Exclusive Remedy for Workplace Injury and Disease

The WCA and ODA together provide a comprehensive, no-fault system of compensation for employees injured in the course of their employment. *Barber v. Pittsburgh Corning Corp.*, 555 A.2d 766, 769 (Pa. 1989); *Wagner v. Nat'l Indem. Co.*, 422 A.2d 1061, 1065 (Pa. 1980).  Both acts include similar exclusivity provisions that reflect the historical *quid pro quo* between employers and employees. *Barber*, 555 A.2d at 769; *compare* Section 303(a) of the WCA, 77 P.S. § 481, *with* Section 303 of the ODA, 77 P.S. § 1403.

Under this system, "both the employer and employee relinquish[] certain rights to obtain other advantages." *Wagner*, 422 A.2d at 1065.  In exchange

---

[14] Herold further notes that Section 108 of the ODA does not specify mesothelioma as an occupational disease. Therefore, according to Herold, the University was required, but failed, to introduce evidence to meet the three-prong catchall test in Section 108(n) of the ODA. *See* 77 P.S. § 1208(n). *See also* Herold's Br. at 34-41.  We reject Herold's argument as hyper-technical.

Unlike the WCA, the ODA does not define mesothelioma as an occupational disease. *Compare* Section 108 of the WCA, 77 P.S. § 27.1 (including cancer caused by asbestos exposure), *with* Section 108 of the ODA, 77 P.S. § 1208 (not including cancer caused by asbestos exposure). However, it is indisputable that mesothelioma would qualify as an occupational disease under Section 108(n) of the ODA. *See* 77 P.S. § 1208(n). *See also Sedlacek v. A.O. Smith Corp.*, 990 A.2d 801, 804 (Pa. Super. 2010) (asserting without citation that the "catch-all definition [of the ODA] . . . has been viewed as including [mesothelioma]").  Moreover, the question certified for this interlocutory appeal implies that the Court has presumed mesothelioma is an occupational disease under the ODA. *See* Cmwlth. Ct. Order, 10/25/21, at 1 ("Herold has been diagnosed with asbestos-related mesothelioma, an occupational disease as defined in the [ODA.]").

In light of our disposition and settled policy to resolve claims on non-constitutional grounds, when possible, *see, e.g.*, *Commonwealth v. Long*, 922 A.2d 892, 897 (Pa. 2007), we decline to address further, constitutional arguments asserted by Herold. *See* Herold's Br. at 46-49.

[15] The issues certified for appeal present questions of law.  Thus, our standard of review is *de novo*, and our scope of review is plenary. *Tooey*, 81 A.3d at 857.

7

for immunity from civil lawsuits by injured employees, and all the risks and costs associated with such suits, the employer ensures certain and reasonable compensation to injured employees. *Barber*, 555 A.2d at 769; *Wagner*, 422 A.2d at 1065. On the other hand, employees need not prove an employer's negligence but "must accept limited, though certain, recovery." *Wagner*, 422 A.2d at 1065. Thus, the exchange benefits both parties.

Our Supreme Court has interpreted the clear language of the acts' respective exclusivity provisions to mean that "the only remedy available to an injured employee is statutory." *Barber*, 555 A.2d at 769. Thus, it has long been presumed that employees who suffer from occupational disease must seek benefits for their disabilities from the Board under either the WCA or the ODA, or under both in the alternative. *See Smith v. Bureau of Workers' Comp.*, 537 A.2d 61, 63 (Pa. Cmwlth. 1988); *Workmen's Comp. Appeal Bd. v. Jones & Laughlin Steel Corp.*, 353 A.2d 90 (Pa. Cmwlth. 1976) (*Jones & Laughlin*); Section 444 of the WCA, 77 P.S. § 1000.[16]

Moreover, the Supreme Court has resisted efforts to formulate exceptions to the exclusive remedy mandate. In *Barber*, approximately 75 former and current employees brought suit in the court of common pleas, alleging

---

[16] Despite similarities in coverage for occupational disease, the two acts remain separate and distinct. *See Jones & Laughlin*, 353 A.2d at 90. *See also Pawlosky v. Workmen's Comp. Appeal Bd. (Latrobe Brewing Co.)*, 525 A.2d 1204, 1210 n.9 (Pa. 1987) (observing that, despite similarities in coverage, the General Assembly has not repealed the ODA). In *Pawlosky*, our Supreme Court implied that the ODA would eventually become obsolete: "Obviously, one of the main reasons for not repealing it was to make clear that the 1939 statute was to remain in force with respect to occupational diseases contracted prior to the effective date of the 1972 disease provisions of the Workmen's Compensation Act." 525 A.2d at 1210 n.9. As it becomes less and less likely that claimants will have contracted an occupational disease prior to 1972, at this point more than 50 years ago, the General Assembly should at some point consider whether the ODA remains a useful component of the workers' compensation system.

8

intentional misconduct by their employer resulted in their exposure to asbestos. *Barber*, 555 A.2d at 767-78. The trial court granted the employer summary judgment based on the ODA's exclusivity provision, but the Superior Court reversed, concluding that "the legislature could have never intended to immunize an employer from liability for harm caused by his reprehensible intentional wrongdoing which was reasonably calculated to lead to severe personal injury or death of employees." *Id.* at 768 (cleaned up). On further appeal, however, the Supreme Court reinstated summary judgment. *Id.* at 772. According to the Court, "the legislative intent to provide a blanket exclusivity for employers under the ODA cannot be ignored. Attempts to induce the Court through policy arguments to the contrary must be unavailing." *Id. See also, e.g.*, *Poyser v. Newman & Co., Inc.*, 522 A.2d 548 (Pa. 1987) (rejecting a similar exception under the WCA).

Even where compensation was unavailable, it was long understood that the WCA and the ODA collectively provide the exclusive remedy for occupational injury and disease. *See, e.g.*, *Moffett v. Harbison-Walker Refractories Co.*, 14 A.2d 111, 113 (Pa. 1940) (rejecting the civil suit of an employee who had contracted silicosis at his workplace, even though the ODA provided no compensation for his partial disability), *superseded by statute as stated in Tooey*, 81 A.3d at 863; *Sedlacek v. A.O. Smith Corp.*, 990 A.2d 801, 809 (Pa. Super. 2010) (holding that temporal limitations to compensation under the WCA and ODA did not alter the exclusive remedy doctrine), *abrogated by Tooey*, 81 A.3d at 865.

We think it fair to say that, over the decades that it has been in place, our comprehensive workers' compensation system has preserved the historical *quid pro quo* between employees and employers. And yet, in our view, it is troubling that our courts have long felt constrained to accept a rather odd distinction between

9

coverage and compensation. *See Sedlacek*, 990 A.2d at 809; *Ranalli v. Rohm & Haas Co.*, 983 A.2d 732 (Pa. Super. 2009). Despite the grand bargain ensconced in the provisions of the WCA and the ODA, the statutory relief defined therein has not always fulfilled the promise that employees would secure limited, though certain, recovery in exchange for the tort immunity accorded employers. The distinction between coverage and compensation is perhaps an inevitable by-product of the compromise of interests represented, but it remains an outstanding flaw in an otherwise competent system.

Therefore, it is hardly surprising that our Supreme Court has come to view the distinction between coverage and compensation with a critical eye, even as it has denied relief to injured workers. *See, e.g.*, *Lord Corp. v. Pollard*, 695 A.2d 767, 769 (Pa. 1997) (Op. in Supp. of Affirm.) (suggesting that unless employee's disease was cognizable and compensable under either the WCA or the ODA, her common law cause of action could proceed); *Barber*, 555 A.2d at 772 ("We are *constrained* to follow the clear legislative mandate notwithstanding the appealing quality of the arguments marshalled to support a contrary approach." (emphasis added)); *Greer v. U.S. Steel Corp.*, 380 A.2d 1221, 1223 (Pa. 1977) (remanding for determination whether employee's pulmonary fibrosis qualified as an occupational disease under the ODA's catch-all provision, 77 P.S. § 1208(n), and absent such proof, holding that civil proceedings could proceed).

## B. *Tooey* and the Applicability of the WCA to Latent Occupational Disease

There is no more obvious flaw in the workers' compensation system than in the context of latent occupational disease. Our Supreme Court has long recognized, and it may not be seriously disputed, that the estimated latency period for asbestosis and most lung cancers is 10 to 20 years, whereas the latency period

10

for mesothelioma can be as long as 50 years. *See Daley v. A.W. Chesterton, Inc.*, 37 A.3d 1175, 1188 (Pa. 2012). However, both the WCA and the ODA purport to limit compensation for disability or death resulting from occupational disease unless it manifests well before the average latency period of these most serious ailments. To wit, Section 301(c) of the WCA, 77 P.S. § 411(2), defines this limitations period to be 300 weeks from the last workplace exposure, and Section 301(c) of the ODA, 77 P.S. § 1401(c), defines it to be 4 years. Thus, under either statutory regime, these limitations periods operate as a *de facto* exclusion of coverage for certain occupational diseases that are prone to latency.[17] *See Tooey*, 81 A.3d at 863.

In *Tooey*, the plaintiffs were diagnosed with mesothelioma approximately 25 years after their last workplace exposure to asbestos. 81 A.3d at 856. The plaintiffs commenced tort actions, and their former employers moved for summary judgment, asserting that the plaintiffs' claims were barred by the WCA's exclusivity provision. *Id.*[18] In response, the plaintiffs argued that the prolonged latency of their mesothelioma removed their claims from the jurisdiction, scope, and coverage of the WCA. *Id.* The common pleas court agreed with the plaintiffs, but the Superior Court reversed, concluding that the WCA's exclusivity provision included coverage for the plaintiffs' mesothelioma that precluded their common law

---

[17] As noted, *supra* at note 10, the ODA includes a savings clause that provides limited relief beyond the 4-year limitations period for employees who develop silicosis, anthraco-silicosis, coal workers' pneumoconiosis, and asbestosis. *See* Section 301(i) of the ODA, 77 P.S. § 1401(i). Notably absent from this list is mesothelioma.

[18] Section 303(a) of the WCA provides:

> The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

77 P.S. § 481(a).

11

claims despite the lack of compensation available under the workers' compensation system. *Id.*

To resolve this distinction between the scope of coverage and the availability of compensation, the Supreme Court examined the plain language of Section 301(c)(2) of the WCA, 77 P.S. § 411(2). *Id.* at 857-60. That section places a time limitation on claims for occupational disease and provides in relevant part:

> [W]henever occupational disease is the basis for compensation, for disability or death under *this act, it shall apply* only to disability or death resulting from such disease and occurring within three hundred weeks after the [last occupational exposure].

77 P.S. § 411(2) (emphasis added).

Agreeing with the plaintiffs, the Court concluded that the word "it" in the phrase, "it shall apply," must refer to "this act." *Tooey*, 81 A.3d at 859-60. Thus, the Court construed Section 301(c)(2) as follows:

> [W]henever occupational disease is the basis for compensation, for disability or death under *this act,* [*the act*] *shall apply* only to disability or death resulting from such disease and occurring within three hundred weeks after the [last occupational exposure].

*Id.* (emphasis added).

Reading the WCA exclusivity provision in conjunction with this interpretation of Section 301(c)(2), the Supreme Court imparted a jurisdictional element to the limitations provision and concluded that the WCA did not apply to latent occupational diseases that manifest more than 300 weeks after the last occupational exposure. *Id.* at 865. Accordingly, the Court reversed the Superior Court and remanded so that the plaintiffs' tort actions could proceed. *Id.*

In an alternative analysis, assuming that Section 301(c)(2) was ambiguous, the Court further reasoned that the remedial purpose and objectives of

12

the WCA favored an interpretation that would permit the plaintiffs to proceed with their civil claims. *Id.* at 860-65. In sifting through the parties' arguments, certain themes resonated with the Court. On the one hand, the plaintiffs argued that, in those cases involving latent mesothelioma, the *quid pro quo* contemplated by the WCA could not be effectuated. *Id.* at 860. Indeed, according to the plaintiffs, the no-fault liability granted employers was illusory and was, in effect, full immunity with no reasonable opportunity for employees to obtain any compensation for their injuries. *Id.* at 860-61 (quoting from plaintiffs' arguments).

On the other hand, the Court recognized the long-standing distinction between coverage and compensation. *See id.* at 862-63 (discussing cases). The Court specifically considered the employers' characterization of Section 301(c)(2) as "a statute of repose which serves as a legitimate temporal limitation on recovery, as opposed to a jurisdictional limitation of the [WCA]." *Id.* at 862.[19] The Court clearly rejected this interpretation:

> It is inconceivable that the legislature, in enacting a statute specifically designed to benefit employees, intended to leave a certain class of employees who have suffered the most serious of work-related injuries without any redress under the [WCA] or at common law.

*Id.* at 864.

---

[19] Statutes of repose differ from statutes of limitations, although both serve "to limit the temporal extent or duration of liability for tortious acts." *Dubose v. Quinlan*, 173 A.3d 634, 643 (Pa. 2017) (citation omitted). "[A] statute of repose is a judgment that defendants should be free from liability after the legislatively determined period of time, beyond which the liability will no longer exist and will not be tolled for any reason." *Id.* at 645 (cleaned up). In contrast, "[e]quitable tolling is applicable to statutes of limitations because their main thrust is to encourage the plaintiff to pursue his rights diligently, and when an extraordinary circumstance prevents him from bringing a timely action, the restriction imposed by the statute of limitations does not further the statute's purpose." *Id.* (cleaned up).

The Court also found little merit in concerns that permitting common law claims would expose employers to "potentially unlimited liability." *Id.* at 865-66. Pointing to the traditional and more onerous requirements of tort liability, including proof of negligence and causation, the Court concluded that common law claims arising from a latent occupational disease would not undermine the compromise of interests manifest to the workers' compensation system. *See id.*

In summary, with the *Tooey* decision, our Supreme Court again confronted the distinction between coverage and compensation. In *Greer* and *Lord*, the Court addressed the nature of the employee's particular disease; in *Barber*, the Court considered the nature of the employer's conduct. In *Tooey*, however, the Court wrestled with limitations placed on claims in the context of a latent occupational disease. The Court specifically considered the limitations period defined at Section 301(c)(2) of the WCA, 77 P.S. § 411(2), which purports to limit claims to those that manifest within 300 weeks of the employees' last exposure. Examining its unambiguous terms, the Court determined that Section 301(c)(2) narrowed the jurisdictional scope of the WCA. Additionally, mindful of the remedial purposes of the workers' compensation system, the Court reasoned that the system's humanitarian objectives militated against interpreting Section 301(c)(2) as a statute of repose. Thus, the Court held that latent occupational diseases that manifest beyond the 300-week limitations period are not subject to the exclusivity provision of the WCA.

## C. Herold's Civil Claims are Not Subject to the ODA Exclusivity Provision

The preceding sections provide necessary context to our analysis. Turning to the first issue certified by this Court, namely whether the trial court erred in exercising jurisdiction over Herold's claims, we must examine certain provisions

14

in the ODA.  Our analysis proceeds in several steps.  First, we lay out several general principles that guide our analysis.  Then, we consider the parties' interpretations of Section 301(c) of the ODA, which places a temporal limitation on its definition of "compensable disability or death."  With this definition in hand, we turn to a statutory construction of the ODA preferred by Herold.  We conclude that this construction is unpersuasive and, further, unhelpful to Herold.  Finally, we address the scope of the ODA exclusivity provision and whether it mandates an exclusive remedy for claims arising from latent occupational disease.

### 1. General principles of statutory construction

"The touchstone of interpreting statutory language is to ascertain and effectuate the intent of the legislature." *Summit Sch., Inc. v. Dep't of Educ.*, 108 A.3d 192, 196 (Pa. Cmwlth. 2015); 1 Pa. C.S. § 1921(a).  It is a "guiding principle of statutory construction that when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Summit Sch., Inc.*, 108 A.3d at 196; 1 Pa. C.S. § 1921(b).

"Words and phrases shall be construed . . . according to their common and approved usage." 1 Pa. C.S. § 1903(a).  "In giving effect to the words of the legislature, we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear." *Giant Eagle, Inc. v. Workers' Comp. Appeal Bd. (Givner)*, 39 A.3d 287, 290 (Pa. 2012).  Moreover, it is well settled that the ODA must be liberally construed to effectuate its remedial and humanitarian purposes. *Bley v. Dep't of Labor & Indus.*, 399 A.2d 119, 122 (Pa. 1979).  Therefore, although we may not disregard the plain statutory meaning and language, "borderline interpretations are to be construed in the injured party's favor." *Tooey*, 81 A.3d at 858.

15

If a statute is unclear or ambiguous, then the courts may apply further principles of statutory construction to ascertain the intent of the legislature. *Summit Sch., Inc.*, 108 A.3d at 197; *see, e.g.*, 1 Pa. C.S. §§ 1921(c) (enumerating further considerations), 1922(1) (presuming, *inter alia*, that the legislature does not intend a result that is absurd), 1932 (providing that statutes relating to the same things or class of things, *i.e.*, *in pari materia*, "shall be construed together . . . as one statute"). A statute is ambiguous if there are two or more reasonable interpretations of the statutory language. *Tooey*, 81 A.3d at 860.

### 2. The ODA clearly defines "compensable disability or death"

Principally, the parties direct our attention to Section 301(c) of the ODA, which provides in relevant part:

> Wherever *compensable disability or death* is mentioned as a cause for compensation under *this act*, *it shall mean* only compensable disability or death resulting from occupational disease and occurring within four years after the date of his last employment in such occupation or industry.

77 P.S. § 1401(c) (emphasis added).

As in *Tooey*, the parties dispute the meaning of the pronoun "it." Herold encourages this Court to adopt the textual analysis preferred by the Supreme Court in *Tooey*. Thus, according to Herold, "it" refers to the immediately preceding noun, "act." *See* Herold's Br. at 21-22. In contrast and citing to different grammatical rules, the University asserts that "it" refers to the subject of the preceding dependent clause. Thus, according to the University, "it" must refer to "compensable disability or death." *See* Univ.'s Reply Br. at 8-9.

In our view, Herold's proposed textual analysis of Section 301(c) is more persuasive. Not only does it mirror the analysis adopted by our Supreme Court,

16

but we also observe that the University's analysis would substitute the singular pronoun "it" for a compound or plural term, *i.e.*, "compensable disability or death." Clearly, this would be grammatically incorrect because "[a] pronoun's number is guided by that of its antecedent or referent[.]" The Chicago Manual of Style Online, Rule 5.32 (17th ed. 2017) (https://www.chicagomanualofstyle.org/book/ed17/part2/ch05/psec032.html) (last visited Jan. 21, 2023).

Therefore, the most reasonable interpretation of the relevant language in Section 301(c) is:

> Wherever *compensable disability or death* is mentioned as a cause for compensation under *this act*, [*the act*] *shall mean* only compensable disability or death resulting from occupational disease and occurring within four years after the date of his last employment in such occupation or industry.

77 P.S. § 1401(c) (emphasis added). It is therefore clear and unambiguous that Section 301(c) defines "compensable disability or death." Wherever the ODA mentions compensable disability or death as a cause for compensation, the ODA means only compensable disability or death (1) resulting from occupational disease and (2) manifesting within 4 years after the last workplace exposure. *See Summit Sch., Inc.*, 108 A.3d at 196; 1 Pa. C.S. §§ 1903(a), 1921(b).[20]

---

[20] If we were to accept the University's proposed interpretation, the operative language of Section 301(c) would be:

> Wherever compensable disability or death is mentioned as a cause for compensation under this act, [compensable disability or death] shall mean only compensable disability or death resulting from occupational disease and occurring within four years after the date of his last employment in such occupation or industry.

77 P.S. § 1401(c). We reject this interpretation of the statutory language but note nonetheless that this interpretation *does not alter the meaning of this provision.* Regardless of which substitution is preferred, it remains clear and unambiguous that the legislature sought to place a temporal limit on the definition of "compensable disability or death."

17

### *3. Herold's proposed statutory construction is not persuasive*

This does not end our statutory analysis. As recognized by the University, the operative language employed by the legislature in Section 301(c)(2) of the WCA and Section 301(c) of the ODA is different. *See* Univ.'s Reply Br. at 6. In the WCA, the legislature chose language that conveyed a jurisdictional limit, removing from the WCA's purview claims involving a latent occupational disease that manifests beyond the limitations period. *See Tooey*, 81 A.3d at 859-60 ("[T]he act *shall apply only* to disability or death [arising from occupational disease that manifests within 300 weeks]." (emphasis added)). In the ODA, however, there is no jurisdictional implication to the relevant statutory language. Rather, the plain language of Section 301(c) merely refines the definition of "compensable disability or death."[21]

To address this difference in the statutory language of these provisions, Herold proposes that we construe Section 301(c) *in pari materia* with Section 101 of the ODA, 77 P.S. § 1201. *See* Herold's Br. at 19-24.[22] Section 101 provides a short title and statement of general application; it states as follows:

> This act shall be called and may be cited as The Pennsylvania Occupational Disease Act. *It shall apply to disabilities and deaths caused by occupational disease as defined in this act*, resulting from employment within this

---

[21] The legislature's choice of words in these provisions makes this distinction clear. The definition of "apply," used as an intransitive verb in the WCA is "to have relevance or a valid connection." *Apply*, Merriam-Webster's Dictionary (online ed.) (https://www.merriam-webster.com/dictionary/apply) (last visited Jan. 20, 2023). In contrast, the definition of "mean," used as a transitive verb in the ODA is "to serve or intend to convey, show, or indicate : signify." *Mean*, Merriam-Webster's Dictionary (online ed.) (https://www.merriam-webster.com/dictionary/mean) (last visited Jan. 20, 2023).

[22] Statutes are *in pari materia* when they relate to the same thing or class of things. 1 Pa. C.S. § 1932(a). If possible, statutes *in pari materia* shall be construed together. 1 Pa. C.S. § 1932(b).

18

> Commonwealth, irrespective of the place where the contract of hiring was made, renewed, or extended, and shall not apply to any such disabilities and deaths resulting from employment outside of the Commonwealth.

77 P.S. § 1201 (emphasis added). The phrase, "[i]t shall apply," mirrors the operative language interpreted by the *Tooey* Court as jurisdictional.

According to Herold, if we were to extract from Section 101 the statement of general application and read it in concert with the properly refined definition of "compensable disability or death" set forth in Section 301(c), the combined statutory language would state:

> [The ODA] shall apply to disabilities and deaths caused by occupational disease as defined in this act . . . [and] [w]herever compensable disability or death is mentioned as a cause for compensation under this act, [the act] shall mean only compensable disability or death resulting from occupational disease and occurring within four years after the date of his last employment in such occupation or industry.

Herold's Br. at 22. Thus, Herold concludes, the ODA does not apply to his mesothelioma, which manifested approximately 15 years after his last workplace exposure, because these provisions together limit the scope of the ODA to those occupational diseases that manifest within 4 years. Herold's Br. at 22.

In our view, Herold's proposed construction is unpersuasive. "[I]t is well established that resort to the rules of statutory construction is to be made *only* when there is an ambiguity in the provision." *Oliver v. City of Pittsburgh*, 11 A.3d 960, 965 (Pa. 2011) (emphasis added) (rejecting an *in pari materia* reading of employer subrogation rights defined in the WCA and what is known as the Heart and Lung Act[23]). We have discerned no ambiguity in Section 301(c), nor does

---

[23] Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637-38.

Herold contend that this section is ambiguous. *See* Herold's Br. at 13 (asserting his interpretation is "consistent with [the ODA's] plain language"). Moreover, these provisions address similar, but different concepts. *Compare* 77 P.S. § 1201 ("disabilities and deaths"), *with* 77 P.S. § 1401(c) ("*compensable* disability or death") (emphasis added). For these reasons, we decline to apply this rule of construction.

Further, even if we were to adopt Herold's construction and, essentially, redraft these provisions into a single legislative statement, it would not eliminate the distinction between coverage and compensation as Herold intends. By its plain terms, "[the ODA] shall apply to *disabilities and deaths* caused by occupational disease as defined in this act." 77 P.S. § 1201 (emphasis added). This statement of general application provides coverage for Herold's mesothelioma. On the other hand, Herold cannot establish "*compensable* disability or death" because his mesothelioma remained latent and undiagnosed for fifteen years. 77 P.S. § 1401(c) (emphasis added). Thus, Herold's construction merely highlights that the ODA covers his claim but, in fact, offers no compensation for his devastating illness.

### 4. The ODA exclusivity provision is inapplicable

Finally, we consider whether the ODA provides the exclusive remedy for Herold's claims. The University asserts that "[t]he ODA does not require an employees' [sic] occupational disease to be compensable under the ODA for the exclusivity provision to apply." Univ.'s Reply Br. at 5. Rather, according to the University, "[i]t applies to occupational diseases that manifest within the time limitations prescribed by the ODA and those that do not." *Id.* at 7.

The exclusivity provision of the ODA is found at Section 303 and states as follows:

> Such agreement shall constitute an acceptance of all the provisions of article three of this act, and shall operate as a surrender by the parties thereto of their rights [1] to any form or amount of compensation or damages for any disability or death resulting from occupational disease, or [2] to any method of determination thereof, other than as provided in article three of this act. Such agreement shall bind the employer and his personal representatives, and the employe, his or her wife, or husband, widow or widower, next of kin, and other dependents.

77 P.S. § 1403.[24] Our Supreme Court has interpreted this provision as "a forfeiture by the employee of any and all common law causes of action that the injured employee may wish to pursue." *Barber*, 555 A.2d at 769. However, *Barber* is easily distinguished. In that case, our Supreme Court considered whether to recognize an exception rooted in an employer's intentional misconduct; thus, the latency of an occupational disease was not at issue. *See Barber*, 555 A.2d at 767-78. Further, the Court did not examine the statutory language of Section 301 of the ODA. *See id.* at 770 (merely relying on the "historical underpinnings of the exclusive remedy doctrine").[25]

Section 303 does not require so broad a proclamation. In furtherance of the *quid pro quo* implicit to the workers' compensation system, and except as otherwise provided in the ODA, Section 303 requires that an employee surrender two rights: (1) the right to compensation for disability or death resulting from

---

[24] The "agreement" is "actually a conclusive presumption that both the employer and the employee have agreed to be bound by all of the provisions of the statute." *Barber*, 555 A.2d at 769 n.9.

[25] The same observation applies to relevant precedent from the Superior Court, including *Sedlacek* and *Ranalli v. Rohm & Haas Co.*, 983 A.2d 732 (Pa. Super. 2009), in which the court considered claims arising from latent mesothelioma. Those decisions are not persuasive because the court failed to consider the relevant statutory language. Further, those decisions were abrogated by our Supreme Court in *Tooey. See Scott v. Duquesne Light Co.* (Pa. Super., No. 2139 WDA 2009, filed May 12, 2014) (unreported).

21

occupational disease and (2) the right to select a method of securing compensation for disability or death. *See* 77 P.S. § 1403. As we have discussed, *supra*, Section 301(c) defines "compensable disability or death" in clear and unambiguous terms, and that definition includes a temporal limitation. Applying that definition here, we conclude that the exclusive remedy mandate extends only to those claims asserting compensable disability or death resulting from occupational disease and manifesting within 4 years after the last workplace exposure. *See Summit Sch., Inc.*, 108 A.3d at 196; 1 Pa. C.S. §§ 1903(a), 1921(b).

This reasonable interpretation does not eliminate *per se* the distinction between coverage and compensation in the ODA for claims involving latent occupational diseases, but it does recognize an exception to the exclusive remedy mandate of the workers' compensation system. Absent compensable disability or death as defined by the ODA, an injured employee has not surrendered the rights to pursue compensation in a manner of their choosing. Therefore, we hold that the exclusivity provision does not apply to Herold's claims, and the Board lacks exclusive jurisdiction to adjudicate these claims.

We acknowledge that neither party has addressed the plain language of Section 303 in arguments to this Court, choosing instead to focus on the ODA's limitations provision at Section 301(c). However, both parties have presented policy arguments in favor of their preferred statutory interpretations. *See* Univ.'s Br. at 15-18; Herold's Br. at 24-28. Therefore, assuming for purposes of argument that there may be other reasonable interpretations of the statutory language, such that Section 303 is ambiguous, we may consider policies underlying the statute and the consequences of a particular interpretation. *Summit Sch., Inc.*, 108 A.3d at 197; *see, e.g.*, 1 Pa. C.S. §§ 1921(c).

22

The policy considerations voiced by our Supreme Court in *Tooey* are persuasive. *See Tooey*, 81 A.3d at 860-65. Clearly, the Court has rejected any construction that grants full immunity to employers, leaving injured employees without an opportunity for reasonable compensation for their injuries. *Id.* at 864. This would do irreparable harm to the basic compromise inherent to the workers' compensation system. Further, the Court has rejected concerns for the financial implications of permitting certain limited claims to proceed in the courts of common pleas. *Id.* at 865-66. As the Court concluded, it would be inconceivable that the legislature intended to leave those employees who have suffered the most without any redress under the workers' compensation system or at common law. *Id.* at 864.

For these reasons, we reject the University's policy arguments against a *Tooey*-type exception for claims involving latent occupational diseases. *See* Univ.'s Br. at 15-18. Considering the remedial purpose of the ODA and the consequences of denying Herold and others like him any chance for compensation, we conclude that the legislature did not intend for employees suffering from an occupational disease that manifests outside the ODA's 4-year limitations period to surrender their rights as indicated in the ODA's exclusivity provision.

## D. The Doctrine of Primary Jurisdiction is Inapplicable

We turn now briefly to the second issue certified for appellate review. Considering our interpretation of Section 303, and the simplicity of the relevant factual and legal issues, Herold is not required to present his claims to the Board in the first instance.

The courts of common pleas have unlimited jurisdiction over all actions and proceedings, except as otherwise prescribed by law. *Cnty. of Erie v. Verizon N., Inc.*, 879 A.2d 357, 363 (Pa. Cmwlth. 2005); 42 Pa. C.S. § 931. The doctrine of

23

primary jurisdiction creates "a workable relationship" between the courts and administrative agencies. *Elkin v. Bell Tel. Co. of Pa.*, 420 A.2d 371, 376 (Pa. 1980). "[I]n appropriate circumstances, the courts can have the benefit of the agency's views on issues within the agency's competence." *Id.* Indeed, the chief benefit is "derived by making use of the agency's special experience and expertise in complex areas with which judges and juries have little familiarity." *Id.*; *see, e.g.*, *Weston v. Reading Co.*, 282 A.2d 714, 722-26 (Pa. 1971) (deferring to Interstate Commerce Commission's expertise in national transportation policy, where the dispute involved complex issues arising from the merger of rail carriers).

However, courts should not develop a dependence on administrative agencies simply because a controversy implicates agency expertise. *Elkin*, 420 A.2d at 377. Therefore, "[w]here . . . the matter is not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility." *Id.* This would be a wasteful exercise that produces no appreciable benefits. *Id.*

Here, Herold provided evidence that his mesothelioma was diagnosed more than 4 years after his last workplace exposure to asbestos. Opp'n to Univ.'s Mot. For Summ. J., 1/21/21, at 5 (citing Dep. of Herold, 1/21/20). Mindful of the procedural posture of this case, we view this evidence in the light most favorable to Herold. *See Eleven Eleven Pa., LLC*, 169 A.3d at 145. At some point, the University may challenge this evidence, and a fact finder will determine its sufficiency and weight, but such determinations are commonplace in civil trials; they are not peculiarly within the Board's expertise. Further, the legal implications of this evidence are straightforward. If a fact finder credits this evidence, then Herold's claims are not subject to the exclusive remedy mandate of the ODA, and his civil

24

claims can proceed. On the other hand, if a fact finder does not accept this evidence, then the exclusive remedy mandate applies, and the trial court lacks jurisdiction over Herold's claims. For these reasons, we discern no appreciable benefits in requiring the trial court to stay proceedings and transfer the matter for initial review by the Board, which would then be required to transfer the matter back to the trial court if it found Herold's latency evidence sufficient.[26]

## IV. CONCLUSION

In conclusion, the ODA remains an integral part of a comprehensive, no-fault system of compensation for employees that suffer disability or death in the course of their employment. Generally, in exchange for reasonable and certain compensation administered by the Board, an employee surrenders the rights to pursue compensation in a manner of the employee's choosing. However, absent compensable disability or death, the employee has not surrendered these rights. Thus, we recognize an exception to the exclusive jurisdiction of the Board to adjudicate claims asserted by an employee diagnosed with an occupational disease more than 4 years after the employee's last workplace exposure to the hazards of that disease. Finally, because the issues relevant to the latency of an employee's occupational disease are not peculiarly within the Board's expertise, the employee may commence civil proceedings in an appropriate court of original jurisdiction.

Order affirmed. Case remanded to the trial court for further proceedings. Jurisdiction relinquished.

LORI A. DUMAS, Judge

Judge Fizzano Cannon did not participate in the decision in this case.

---

[26] Although this case comes before us following the denial of summary judgment, we note there is no need to await the close of pleadings before challenging latency evidence as there are jurisdictional implications parties can raise via preliminary objection. *See* Pa. R.C.P. 1028(a)(1).

25

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brad Lee Herold, as Executor of the      :
Estate of William L. Herold              :
                                         :
                                         :
        v.                               :      No. 998 C.D. 2021
                                         :
University of Pittsburgh - of            :
Commonwealth System of Higher            :
Education and 3M Company; Abb            :
Motors and Mechanical, Inc. f/k/a        :
Baldor Electric Company; Allied Glove    :
Corporation; A.O. Smith Corporation;     :
Armstrong International, Inc.; Aurora     :
Pump Company; Baltimore Aircoil          :
Company, Inc.; Beazer East, Inc.         :
Individually and as Successor to         :
Koppers Company, Inc., and Successor-    :
in-Interest to Thiem Corporation and     :
Universal Refractories Company; BMI      :
Refractor Services, Inc.; Individually   :
and as Successor-in-Interest to Premier  :
Refractories, Inc., f/k/a Adience, Inc., :
Successor-in-Interest to Adience         :
Company, LP, as Successor to BMI,        :
Inc.; Burnham Boiler Corporation         :
n/d/b/a Burnham Commercial; Bryan        :
Steam, LLC; Carrier Corporation; CBS     :
Corporation, a Delaware Corporation,     :
f/k/a Viacom Inc., Successor by Merger   :
to CBS Corporation, a Pennsylvania       :
Corporation, f/k/a Westinghouse          :
Electric Corporation and Westinghouse    :
Air Brake Company; Cleaver Brooks,       :
Inc., f/k/a Aqua-Chem, Inc. d/b/a        :
Cleaver Brooks Division; Crane Co.;      :
Delval Equipment Corporation;            :
Dezurik, Inc.; Donald McKay Smith,       :
Inc.; Dunham-Bush, Inc.;  E.E.           :
Zimmerman Company; Eaton                 :
Corporation in its own right and as      :
successor to Cutler-Hammer,              :
Incorporated; Eichleay Corporation;      :

Ferro Engineering Division of          :
on Marine Services Company,            :
LLC, f/k/a Oglebay Norton Company;     :
Flowserve US, Inc., Individually and as :
Successor to Byron Jackson             :
Pumps, FlowserveGestra, Durametallic   :
Corp., Aldrich Pumps; Cameron Pumps;   :
Vogt Valves; Wilson-Snyder             :
Centrifugal Pump; and Rockwell         :
Valves; FMC Corporation, Individually  :
and as Successor-in-Interest to Peerless :
Pump Company, Chicago Pump             :
Company, Sterling Fluid System, Inc.   :
and former subsidiary Crosby Valve,    :
Inc.; Foseco, Inc.; Foster Wheeler     :
Corporation; Gardner Denver, Inc.;     :
General Electric Company; Grinnell     :
LLC; Goulds Pumps, LLC; I.U.           :
North America, Inc.; America, Inc.     :
as Successor-by-merger to the Garp     :
Company, f/k/a The Gage Company,       :
f/k/a Pittsburgh Gage and Supply       :
Company; IMO Industries, Inc.,         :
f/k/a IMO Delaval, Inc., f/k/a         :
Transamerican DeLaval, Inc., f/k/a     :
DeLaval Turbin, Inc., DeLaval Turbin,  :
Inc., DeValco Corporation; Ingersoll-  :
Rand Company; Insul Company, Inc.;     :
ITT Corporation, f/k/a ITT Industries, :
Individually and as Successor-in-Interest :
to Bell & Gossett Domestic Pump; J.H.  :
France Refractories Company; Kruman    :
Equipment Company; Mallinckrodt US     :
LLC, in its own right and as Successor- :
in-Interest to Imcera Group, Inc., and :
International Group, Inc., and         :
International Minerals and Chemical     :
Corporation, and as Successor-in-      :
Interest to E.J. Lavino; Mine          :
Safety Appliances Company, LLC as      :
Successor-in-Interest by Merger with   :
Mine Safety Appliances Company;        :
Minnotte Contracting Corporation;      :

M.S. Jacobs & Associates, Inc.; :
Nagle Pumps, Inc.; Peerless Industries, :
Inc.; Power Piping Company; Riley :
Power Inc.; Safety First Industries, Inc., :
in its own right and as Successor-in- :
Interest to Safety-First Supply, :
Inc.; Schneider Electric USA, Inc. f/k/a :
Square D Company, in its own right and :
as successor to The Electric Controller :
and Manufacturing (EC&M); Spirax :
Sarco, Inc.; SPX Cooling Technologies, :
Inc., f/k/a Marley Cooling Technologies :
Inc., f/k/a The Marley Cooling :
Company; TACO, Inc. f/k/a Taco :
Heaters, Inc.; The Goodyear Tire :
& Rubber Company; The Gordon-Rupp :
Company; The H.B. Smith Company, :
Inc.; Trane U.S. Inc., Successor-by- :
Merger to American Standard, Inc., :
Union Carbride Corporation; United :
States Steel Corporation; Warren :
Pumps LLC; Weil-McLain Company, :
Inc.; York International Corporation; :
and Zurn Industries, LLC f/k/a Zurn :
Industries, Inc. a/k/a Erie City Iron :
Works :
:
Appeal of: University of Pittsburgh – :
of the Commonwealth System of :
Higher Education :

# **O R D E R**

AND NOW, this 16th day of February, 2023, the Order of the Court of Common Pleas of Allegheny County, entered May 17, 2021, and which denied the University of Pittsburgh summary judgment, is AFFIRMED. Brad Lee Herold's Application for Relief, filed October 12, 2022, is DENIED. This matter is remanded for further proceedings. Jurisdiction relinquished.

_____
LORI A. DUMAS, Judge